SMITH HARPENDING, AND OTHERS, APPELLANTS, *v.* THE MINIS-
TER, ELDERS, AND DEACONS OF THE REFORMED PROTEST-
ANT DUTCH CHURCH OF THE CITY OF NEW YORK, AND OTHERS,
APPELLEES.

A bill was filed in the Circuit Court of the southern district of New York, by the heirs of John Haberdinck, claiming certain real estate in the city of New York, and an account of the rents and profits thereof; the estate having been devised, in 1696, to the Ministers, Elders, and Deacons of the Reformed Protestant Dutch Church of the city of New York. To this bill, the respondents, among other matters, pleaded that they had been in actual adverse possession of the premises for forty years next before the filing of the bill.

If the complainant by his bill, or the respondent by his plea, sets forth facts from which it appears that the complainant, by the statutes of the state, has no standing in Court, and for the sake of repose and the common good of society is not permitted to sue his adversary; it is the rule of the Court not to proceed further, and dismiss the bill.

In pleading the statute of limitations to a bill in Chancery, it is not necessary that there shall be an express reference to the statute of the state in which the proceeding is instituted. The Court is judicially bound to take notice of the statutes of limitations, when the facts are stated and relied on as a bar to further proceedings; if they are found sufficient.

One tenant in common may hold adversely to and bar his co-tenant.

After the elapse of twenty years from the commencement of adverse possession of the property claimed, the defendants had a title as undoubted as if they had produced a deed in fee simple from the true owners of that date; and all inquiry into their title or its incidents, was effectually cut off.

The Supreme Court of the United States are bound to conform to the decisions of the State Courts, in relation to the construction of the statute of limitations of the state in which the controversy has arisen. Such is the settled doctrine of the Supreme Court. Cited Green *v.* Neal, 6 Peters, 291.

No distinction is made by the Courts of the state of New York, between a religious corporation, claiming to hold under the statute of limitations of the state, in regard to capacity to hold by force of the statute; therefore none can be taken by the Supreme Court of the United States.

The statute of New York is in substance the same as that of 21 Jac. 1. That such a possession as is set forth in the plea in this case is protected by the statute, has been the settled doctrine of the Courts of that state for more than thirty years, if it ever were doubted.

The second part of the plea of the defendants averred that all the parts of the lands sold had been conveyed and the moneys received by the defendants more than forty years before the plea was filed. This is deemed a conclusive bar. The bill seeks the money, and six years barred the relief; this being a concurrent remedy with the action at law.

The defendants had disclaimed the ownership of certain lots which were described in the bill, and of which they were charged with being owners. The Circuit Court dismissed the bill as to these lots. Held, that this was proper. There was no probable cause for retaining this part of the bill, to obtain an account from the respondents. Obviously, no claim exists that can be made available for the complainants, in regard to this portion of the property.

ON appeal from the Circuit Court of the United States for the southern district of New York.

On the 25th of March, 1839, the appellants filed a bill in the Circuit Court of the United States for the southern district of New York, they being citizens of other states than the state of New York; stating that, prior to September, 1696, John H. Haberdinck, of the city of New York, with four others, was seised in fee of the "Shoemaker's fields or lands," a tract of about sixteen acres in the city of New York; and that in the same year partition of the same was made, and Haberdinck became seised in severalty of divers parcels of the land described in the bill. Haberdinck died seised of the land in January, 1722, leaving a widow, who died in 1723; and John Haberdinck, Junior, of New York, was his only heir, and inherited his lands. The bill states, that the complainants are the heirs of John Haberdinck, Junior, their names having been varied to Haberding. It states that they are seised, with Peter Haberding, a citizen of New York, of these lands as heirs as aforesaid; and that no sale or devise of the lands has been made by them, or by any of their ancestors.

The bill states that John H. Haberdinck made leases of part of the lands for ninety-nine or more years, and some of the leases so granted did not expire until after 1829. The Dutch Church have, for some time past, had possession of the lands allotted to John H. Haberdinck by the partition; and have claimed that they took such possession in virtue of some will or devise of John H. Haberdinck to them. They also obtained possession of the undivided parcel, and allege title to some shares of it by deeds from the other tenants in common; and have demised parts of the same, &c.

The bill alleges that the church is a religious corporation in the city of New York, incorporated under the laws of New York. The complainants have applied to the church for a statement of

the title under which they claim the property, and for a list of papers, and the inspection of their rent-roll, and an account of the rents and profits.

In March, 1822, the bill alleges that the defendants returned to the Chancellor of New York an inventory, in which they set forth that these lands are held by them as "sundry lots devised to the church by John Haberdinck, called the Shoemaker's land, as mentioned in a former inventory, situated in the second and third wards of the city of New York:" and the defendants alleged the said will is valid.

The parts of the will set out in the bill of the complainants relating to the property claimed by the complainants are as follows: "Item. I, the said John Haberdinck, do hereby give, devise, and bequeath unto the minister, elders, and deacons of the Reformed Protestant Dutch Church of the city of New York, and their successors forever, all my, the testator's, right, title, and interest, and property, in and to an equal fifth part, share, and proportion of all that tract or parcel of land, situate, lying, and being upon Manhattan Island, within the city of New York, called or known by the name of Shoemaker's field or land, on the north side of Maiden lane or path, &c.; the which tract or parcel of land contains, by estimation, sixteen acres." The will then describes the different lots, according to the partition, and proceeds, "all of which several and respective lots, pieces, and parcels of land, I, the said testator, do hereby give, devise, and bequeath unto the said minister, elders, and deacons of the Reformed Protestant Dutch Church of the city of New York, and to their lawful successors forever, with all and singular the buildings, messuages, edifices, improvements, emoluments, profits, benefits, reversions, advantages, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining or reputed or esteemed as part, and belonging to the same; to have and to hold all the aforesaid several and respective lots, pieces, and parcels of land, with the several and respective premises and appurtenances, unto the said minister, elders, and deacons of the Reformed Protestant Dutch Church of the city of New York, and their lawful successors, to the sole and only proper use, benefit, and behoof of the said minister, elders, and deacons of the Reformed Protestant Dutch Church of the city of New York, and their lawful successors for-

ever, for to be received and employed by the said minister, elders, and deacons of the Reformed Protestant Dutch Church of the city of New York, immediately after my decease and the decease of my wife Mayken Haberdinck, and only to the proper use, benefit, and behoof, and for the payment and satisfaction of the yearly stipend, salary, or maintenance of the respective minister or ministers, which, from time to time, and at all times hereafter, shall be duly and legally called to the ministry of the said church, and to no other use or uses whatsoever. And I, the said testator, do hereby further order and direct, that the sole management, direction, administration, and government of the same, after my decease and the decease of my wife Mayken Haberdinck, shall only be and remain in the hands, care, management, direction, and administration and government of the elders of the said church, for the time being, or whom they shall nominate, constitute, and appoint to act in their stead or place, and without being subject or bound to render any account of the same, but only to the minister or ministers, elders, and deacons of the said Reformed Protestant Dutch Church of the city of New York, for the time being. Provided, always, that it shall not be lawful, nor in the power of the said minister, elders, and deacons of the Reformed Protestant Dutch Church of the city of New York, nor their successors, nor the said elders or managers for the time being, nor in the power of any other person or persons whatsoever, forever hereafter, to make sale, dispose, or alienate any part of the said lands and premises, nor any of the profits, benefits, revenues, or advantages accruing or arising out of the same to any use or uses whatsoever; but that the same shall be forever and remain to the only proper use, benefit, and behoof as is above recited, declared, and expressed."

The complainants charge that the will and the devise to the church was, at the date of the will, at the testator's death, and is at this time wholly and absolutely void, illegal, and inoperative at law. "The church could not and did not acquire any right or estate under the will; and the possession of the premises was in subordination to the title of the complainants and their ancestors. The church took possession of five of the lots that were on Broadway, although only a part of two were devised to them."

The bill further states, that the church was incorporated on the

11th of May, 1696, then having a church in Garden street, and certain tracts of ground, and were authorized "to have, take, acquire and purchase" lands, &c., and not exceeding the yearly value of two hundred pounds, New York currency, equal to five hundred dollars. That the property held by them was considerable, and has ever since been actually, and for twenty years past has been worth, at least ten thousand dollars. The yearly value of the lands devised by Haberdinck has ever since greatly exceeded the amount which the church was from time to time by law authorized to hold; and from 1780 to 1800, the yearly value thereof was ten thousand dollars; from 1800 to 1820, at least twenty thousand dollars; and to this time, at least thirty thousand dollars. In order to keep down the "annual income," the church has given leases for long terms at a low rent, and then sold such terms for large sums, and used the money to buy other lands for other purposes.

The church has always held those lots under claim of title subordinate to the title of the complainants, and their ancestor; it was always incapable, in law, of acquiring or holding a valid title thereto by adverse possession; and was at the time of Haberdinck's death incapable, in law, of acquiring and holding the lands by devise. If it should appear that the lands were actually devised to the church by the will, yet such devise will appear to have been made on the "express condition" that the lands were to be held by the church for the payment and satisfying the yearly stipend, salary, or maintenance of the respective minister or ministers which should be from time to time duly and lawfully called to the ministry of the said church, and to no other use whatever; and on the express condition, that it should not be lawful for the ministers, elders, and deacons, to sell or dispose of any part of the property, or to apply any of the profits, revenues, &c., to any use whatever, other than those mentioned.

At the time of the making of his will by Haberdinck, the only church was in Garden street. They have since built two others, and abandoned that as a place of worship. The income of the church from these lands has annually, for fifty years, greatly exceeded the yearly salaries paid or which could be paid to their ministers, and they have used the large surplus annually for other purposes, &c.

The bill prays for a discovery, whether the church holds under the will of Haberdinck, and if so a full account of the same, and of all matters relating to the property; and for an account, &c..

The defendants after various exceptions to the bill of the complainants, and to the relief sought in the same, and the denial of many of the allegations in the bill, and disclaiming the ownerships of certain lots described in the bill, and in the answer filed, say:

These defendants do plead in bar, and by way of plea say, that for all the time commencing forty years prior to the filing of the bill of complaint, namely, commencing on the twenty-fifth day of March, in the year of our Lord one thousand seven hundred and ninety-nine, until and at the time of the filing of this plea, these defendants were and have been, and are by themselves and tenants holding under them, in the sole and exclusive possession of all and singular the lands in the bill of complaint mentioned, (excepting the lands above described as hereinafter disclaimed,) during all which time of possession, all and singular the said lands have been improved by buildings, and enclosed with a substantial enclosure, excepting that the land twenty-five feet in width from John street, to Fair street, now Fulton street, between the side of lots 84 and 86, and a continuation thereof, having been during all that time enjoyed as a public street for access to the lands upon the same, and as a public street then, ever since, and now used by all good citizens of this state as a public street and highway, without rents, issues, or profits thence accruing, and excepting a piece of land twenty-five feet in width, extending from the rear of lot 62 in the said bill mentioned, seventy-five feet along the rear of lots 41, 42, and 43, and excepting the two pieces of land, the one extending along the south-westerly side of lot No. 68, and the rears of lots 77, 78, 79, and 80; the other extending along the north-easterly side of lot 66, and the rears of lots 32, 33, 34, and 35, from Nassau street, to the rear of the said lots; and during all that time these defendants have by themselves and their tenants holding under them, actually occupied and possessed all and singular the said lands, claiming and enjoying the same, during all the time aforesaid, as being seised thereof in their demesne as of fee, in severalty, and in their own sole and exclusive right as the sole and exclusive owners thereof in their own right in fee-simple, and to their own sole and

exclusive use and not otherwise; and during all that time, these defendants have been in the sole and exclusive receipt and enjoyment of the rents, issues, profits, avails, and proceeds thereof, to the sole and exclusive use of the said corporation claiming the right to receive and enjoy the same to their own use and not otherwise.

The following points, relating to the matters decided by the Court, were submitted by the counsel for the appellants.

1. The plea is defective, in regard to the allegations in the bill, as to the defendants entering and holding under leases from Haberdinck.

2. The plea does not make out a complete and absolute title in the defendants to the premises in question; and it is therefore no defence, either to the discovery, or the relief sought by the bill.

1. The defendants were incapable of taking lands by devise; and they are chargeable in law with a knowledge of this incapacity.

2. The devise to the defendants by the will of John Haberdinck was absolutely void; and the defendants knew of its nullity.

3. The entry of the defendants was made, and their possession commenced under the void devise to them in the will of John Haberdinck, and was continued and held under that devise, to the time of filing the bill in this cause.

4. The possession and claim of the defendants were not, in their inception, hostile to the title of the heir at law; but were consistent therewith, and in subordination thereto.

5. The plea does not show when or by what means the possession then commenced, and held, was changed into an adverse holding. And, although it sets up a claim of title in severalty from 1799 down, it does not show on what title, or colour of title, that claim was founded. On the contrary, by not negating the charges in the bill in respect to their claiming under the will, it is admitted that since 1799, as well as before, their claim has been founded on the void devise in the will of Haberdinck.

6. The defendants' possession and claim of title, from the time of their first entry to the filing of the bill, having been at all times exclusively under and by virtue of a void devise, known to them to be such, are unavailing for any purpose.

They do not, therefore, show an adverse possession.

7. The views taken of the defendants' possession, are more

2 Q 2

[Harpending v. The Dutch Church.]

especially applicable to this case, as otherwise the policy of the prohibition contained in the statute of wills will be defeated, and the defendants allowed to do indirectly what they are expressly prohibited by law from doing directly.

The decree of the Circuit Court should be reversed, and the plea overruled.

The case was argued by Mr. Eaton, and Mr. Coxe, for the appellants; and by Mr. D. Lord, Jr., and Mr. Wood, for the defendants.

Mr. Eaton explained in detail the various statements and facts presented on the record, and the grounds upon which the matter was to be considered by the Court; contrasting the numerous circumstances set forth in the bill, answer, and plea, in the review.

That the complainant's ancestor, as tenant in common, was seised of a tract of land called the Shoemakers' field, at present situated in the most populous part of the city of New York; of which, partition having been made, he had seisin in severalty and continued in undisturbed possession until his death, in 1723. That he devised this portion of his estate in trust, &c., to this church, the defendant. That it was a religious corporation. That complainants are the heirs at law, and have never parted with any portion of this estate. That in pursuance of the trust created in favour of the church, the minister, elders, deacons, &c., entered into the possession, and have ever since retained that possession.

None of these special averments contained in the bill were denied; and hence, by the acknowledged rules of law, they are to be taken as confessed. He argued, that by the rules of equity proceedings, every material allegation contained in a bill which failed to be controverted by the plea and answer, in support of it, was to be taken as true. Mitford's Pleadings, 299, 300; Story's Eq. Pleading, sec. 38, 694; 4 Paige's Ch. Rep. 195.

By the laws, which from time to time had been enacted, usually termed the statutes of mortmain, of wills, &c., and which being in force in England were alike in force within the colonies, no devise of real property to a religious corporation could be available to pass an estate; such devise was void. Various stratagems at different times had been resorted to by the clergy, to defeat

these enactments, by a resort to the creating of uses, trusts, and long leases, which were as often met by other corresponding legislation on the part of the British parliament. Uses and trusts had been placed upon the same footing as devises, and made subject to the laws of mortmain by statute of 15 Rich. 2, ch. 15. Leases for a longer period than twenty years were forbidden also by the British parliament. Statute 23 Hen. 8, ch. 10; 1 Vesey, Jun. 218; 6 Vesey, 404; 9 Vesey, 535.

The statutes referred to were in force in the colony of New York to the year 1788. 4 Paige, Ch. Rep. 198. Being in force, as the authority shows, a colonial act of legislation was incapable to repeal, alter, or change them Not even the British parliament could change them, so as to affect a right which had become vested before. It is not a prerogative right of the king to make dispensation of an express statute. He cannot do it. The king cannot do any act forbidden by law.

The charter of incorporation under which the defendants allege a right to take the estate in question, can be of no avail whatever; because it was not in the power of the sovereign to permit that to be done which the laws of the kingdom prohibited. As the laws prohibited a devise of real estate to religious houses, no sanction on the part of the king could legalize any such bequest, to the prejudice of the rights of third persons: such was not a regalia privilege.

Against the right of the complainants to recover, a plea in bar is interposed, setting forth that this church, for a period of forty years before the filing of the present bill, had enjoyed quiet and undisturbed possession; that it had received to its own use the rents and profits. An answer in support of the plea is also offered, with a disclaimer as to a part of the property claimed.

A plea may be good in part and bad in part. That which is good is only to be regarded, the rest is to be set aside; but an established rule of equity practice is, that a plea to be good must be clear, definite, precise, and full, as to all the matter which is offered as a bar to the relief sought. 4 Paige, Ch. Rep. 195.

The plea under consideration was not of that description and character. The admissions made upon the record are that the defendants' first entry was under, and in pursuance of a devise of claimant's ancestor, which at the time was void, as being ad-

verse to existing laws; and they fail to show, either by the plea·
or answer, that their possession ever assumed any thing of ad-
verse character; then it was nothing more than a permissive,
silent, acquiesced in possession, subordinate to, and not adverse to
the title of complainants.

He who enters upon lands by permission of another is estop-
ped to urge an outstanding title in another person, for the reason
that the possession of the tenant is the possession of the lessor;
and that cannot be called in question until some act of· ouster or
of open disclaimer be made.   4 Wheat. 213;  5 Wheat. 124;
7 Wheat. 59;  9 Wheat. 288.

In these decisions, made by the Supreme Court, the principle
is asserted and maintained that to make the statute of limitations
available, the possession must be adversary; not permissive, or
subordinate to the title of complainants.   The pleadings admit
that from 1723, the time of the first entry under this void devise,
to the year 1799, a period of more than seventy years, the pos-
session by the church was under, and in pursuance of this very
devise about which we are inquiring, and hence was in subordi-
nation to it; and as such, not being adverse, the statute of limi-
tations is wholly insufficient to cure the deficiencies of the title.
The authorities referred to refuse such a privilege.

Under the devise made to the deacons and elders of this church
possession was taken.   It was a void devise, being contrary to
the statutes of mortmain.   Their possession was that of the com-
plainants; the church merely holding in trust, not in fee.   From
lapse of time a perfect title may be created by presumption.
The law will after a possession of twenty years presume the
existence of a deed; but if the facts adduced are found to be
insufficient to warrant a belief of title, then the presumption fails
of its effect.   A tenant who has lived on his farm for twenty
years, may defend himself on the presumption of a deed; but
if he produce an insufficient and void deed or title, then the force
of the presumption is taken from him; and for this most obvious
reason, that the weight and force of presumption ever fails where
facts interpose to put aside the presumption.

The rule of law is, that the title relied on must be of such a
description and character that in view of legal consideration it
must appear to be primâ facie a good title; and hence arises the

difference between a void and voidable title. In the one, not the other, the statute of limitations may be relied on. Authorities are wanting to show that upon an admitted void title, or upon a trust, any benefit can be derived from a resort to lapse of time. Ten Eyck v. Frost, 5 Conn. 346; 6 Wheat. 497; 1 Peters C. C. Rep. 361.

No authority could be found to give sanction to so pretended a defence as the present. The title relied upon was void at its incipiency; and no circumstance has since arisen to change its original defective character. Even the stale idea of innocent purchaser did not come to its aid. An old man, led away by superstitious apprehensions, gave his all away from his relations, to propitiate his hopes through the church. The wardens and elders, well knowing that his indulged feelings were at war with what the laws of the country authorized, encouraged him to the act, and received this bequest. They entered into the possession under that devise, and in that way still hold it. Nothing, then, of innocent purchaser could interpose in their favour: the wrong originally practised is the wrong which still remains, and for which the successors of this church should be answerable, precisely as if they were now brought back to the year 1723 when this will was introduced for probate and registration. Then it was a void devise; and remaining so to this time under unchanged circumstances, it is void still as regards the heirs at law. With this religious corporation the wrong commenced, and with it the wrong has continued. No change of the original parties having taken place after the lapse of more than a century, the matter ought to be weighed as though it were to be considered apart from the long intervening time. The statute of limitations, under such circumstances, should not afford protection. The possession of this church was merely a trust for the benefit of the cestui que trust—the heirs at law; and by legal interpretation should in no otherwise be understood.

Judicially it had been pronounced that the statute of limitations was a plea that ought favourably to be received. It would not be proper to controvert the correctness of that opinion; but the present case did not fall under the reason of that decision— cessante ratione cessat et ipsa lex. With innocent buyers without notice, the rule might apply; but here the original wrong-

doers and violators of the law were still the holders of the property in controversy; the use and benefit of which they have enjoyed for a century, without having any legal title whatever. It was not for them to talk of hardships, after that they had held for so long a period possession of a large estate, for which not a cent of consideration was ever paid. It was a wrong originally practised, and that wrong was insisted to be carried out, upon no better pretext than a reliance on the statute of limitations; which was wholly inapplicable under all the circumstances that belonged to the case under consideration.

Statutes of limitations were intended for the guiltless—the weak, and the helpless—for imperfect colourable itles, and not for the protection of a corporation; which, as this record shows, has thrown itself into open rebellion against all the mortmain laws which were then in force in the country. The church can sustain no injury, having never paid any thing for this vast property, and hence cannot justly complain. It was received into their possession under a devise which the laws, as the defendants well knew, did not authorize; and hence is void; and being thus void,—a mere trust,—the statute of limitations is incapable to perfect it into a title. The elders of the church entered into the possession of this estate in their own wrong, which the law holds shall never constitute a right; and in violation of the existing statutes of the country; and when at last the heir comes to demand his right he is told, as the plea sets forth, We have had the property of your ancestor so long that we cannot surrender it.

The policy of the English statutes of mortmain, of uses and trusts, was to prevent religious corporations from holding real estate. To argue that the statute of limitations may give title to that which positively the law forbade to be holden, is to effect an object indirectly which could not be done directly; it would be a solecism in terms. The devise being repugnant to law, was a nullity—was void. Theirs is to be considered exclusively as the possession of the heirs.

The statute of New York now in force in that state, after a lapse of twenty-five years, gives title to a mere possessio pedis right; it was passed in 1830. This statute could only have a prospective bearing, it could not act retrospectively. It changed the law as it had before been, and consequently should have no

[Harpending v. The Dutch Church.]

binding effect, until 1855, when the full period of twenty-five years would be completed.

Adverse possession was a term well defined and understood, in England; it was a possession such as was known, open, and avowed, having in it nothing of concealment and secrecy; but showing that a title was relied on, strictly adverse to all and every opposing claim, because colourably legal.

By the statute of New York for quieting titles, an adverse possession is required; and a mere possessio pedis with improvements of the property is defined to be adverse. Here was a new principle introduced, variant from the former acknowledged rule of law, and hence it must fail to be operative until the prescribed period of twenty-five years shall be fully ended and completed, which will not be until the year 1855.

The plea of forty years adverse quiet possession is unavailing, for a further reason which is presented on the record. It is shown, that so recently as 1822, the elders and deacons of this church, in rendering a list of their taxable property to the chancellor, as the laws of New York required, represented this property given in by them, as having been devised to their church by John Haberdinck; denominating it, "The Shoemakers' Field." This confession, voluntarily made, shows that they were then holding by the same tenure under which they originally entered. Nothing of adverse right, or insubordinate to complainants' title was then asserted; so far from it, they admit that their possession at that time was under and in pursuance of the devise made to them by our testator in 1723. This admission, presented on the record, excluded the idea set forth in the plea that an adverse possession for forty years has been held; it was a subordinate, and not an adverse possession.

Neither by the plea, nor answer, was it shown that forty years before the filing of the bill, any thing took place of the nature of ouster; or that any open, public, and notorious disclaimer had been made, and a new and different title asserted. The defendants rest merely on the limitation—the mere naked possession, claiming, as they say, "to have enjoyed the property in their demesne as of fee in severalty, holding adversely, &c."

Claiming in fee is an inconclusive, insufficient plea. It should be more definite. It might be a claim openly or secretly made,

in a way that he in reversion might know nothing of the disclaimer and ouster; and if so made, which the plea fails to explain, clearly it is wanting in those essentials which the decision of this Court make necessary. 5 Wheat. 124; 9 Wheat. 288.

A case in all respects similar to the present, is at hand. 5 Sim. 640. There the defendants had been in possession for seventy years; and to a bill filed by the remainderman to recover the estate, a plea was put in stating that adverse possession of the property had been held during the whole time; and that the receipts and profits had been received. The Vice-Chancellor overruled the plea, and on an appeal taken, his decision was affirmed by Chancellor Brougham: Mylne and Keen, 738.

By the concurrent opinion of both, it was adjudged that to make a plea of adverse possession good, it must show how, where, and after what manner it became adverse, that the complaining party might be enabled, through the notice afforded, to defend against it. This plea before the Court was precisely similar; it asserted an adverse possession, without stating in what it consisted; the tendered issue was too broad to be met; it was not, as it should be, clear, full, and definite, and hence was rightfully overruled. The plea under consideration is in all respects alike, and should be subject to the decision there given. In both cases a mere reliance of adverse possession is insisted upon, omitting to show how or whence it was derived.

The specific devise made was to the minister, elders, and deacons of the church, for the express purpose of paying the salary of the minister; and "to no other use and purpose whatever." The minister then was the holder, both of the use and the trust; and hence was it equivalent to or an actual bequest to the church in fee-simple.

He proceeded to show, that the disclaimer was insufficiently and badly pleaded; and that a plea of this description should be so presented that the complainants might know the persons against whom they should proceed: and cited 1 Montague's Pleas in Equity, 216; Equity Draftsman, 71.

Mr. Lord, with whom was Mr. Wood, for the respondents.
The only equitable relief sought by the bill, is discovery in

aid of an action at law, partition of land held in common, and a declaration of an implied trust. To all these the statute of limitations and lapse of time are a bar at law and in equity : no express trust for the complainants can be pretended; and a trust for others does not prevent the possession of the trustee from being adverse. Piatt v. Vattier, 9 Peters, 415; Elmendorf v. Taylor, 10 Wheat. 168; Bogardus v. Trinity Church, 4 Paige, 178; S. C., 15 Wend. Rep. 111; Hunt v. Wickliff, 2 Peters, 208.

To obviate the bar of the lapse of time, the bill sets out that the respondents entered under leases, but this is denied by the plea; and the plea is supported by the answer, and admitted to be true by not being put in issue.

It is also objected that the plea is insufficient, because it does not set out how the possession was adverse : This is not true, in fact. It sets out an actual occupation, claiming title in fee, in severalty and without any trust for the complainants.

The plea may be considered in two aspects : 1. As setting up a possession without reference to the will alleged in the bill, as the source of the respondents' title. Or, 2. As connected with that will.

1. Without reference, then, to the alleged paper title, the possession is alleged in the plea to be an actual occupancy, by enclosure and improvement, accompanied with claim of title in severalty in fee. This is sufficient to constitute adverse possession. In the case 5 Simons, 645, the plea averred that the possession was adverse, without showing the facts rendering it adverse. Here we show the facts, and upon them the Court see the possession to be adverse; the plea does not withdraw from the Court the legal question as to the character of the possession.

Mere possession without any other circumstance shown, is evidence of seisin in fee. Starkie Ev. 1191, note 9; Bull. N. P. 103. When evidence of title is given, it is then presumed in the absence of contrary proof, to be in subordination to the title : but this presumption is not made in the face of express proof of claim of title; but the possession is qualified by the claim of title, whether claimed as arising tortiously or otherwise. Bull. N. P. 104. Possession must be shown by the plaintiff in ejectment as part of his case; Bull. N. P. 102; Run. Eject. 340; and a posses-

sion with a claim adverse to the plaintiff, certainly is not suffi-
cient to supply this want of the plaintiff. Possession, actual
pedis possessio, does not require paper title as the only criterion
to show its character. See 2 R. Stat. (N. Y.) 221, sec. 5 to 13;
Ricard v. Williams, 7 Wheat. 105, where the claim of title quali-
fied the possession, although no paper title was shown. Jackson
v. Porter, 1 Paine, 645; Jackson v. Oltz, 8 Wend. 440; Jackson
v. Woodruff, 1 Conn. 276; Jackson v. La Framboise, 8 Cowen
R. 603; in all these cases the doctrine is distinctly announced
in the language of the judges. See 2 Roscoe on Real Ac-
tions, 502.

To require that the plea should show how the possession was
hostile in its commencement is allowing the very evil which the
statute is aimed at; the older the possession the more difficult the
proof.

If, then, the possession is allowed to stand alone, it is clearly
adverse, and the plea a perfect bar.

But it is said, that by not denying our entry under the devise,
we admit it, and the plea must be taken with that fact. This re-
quires us to consider the possession in connection with the paper
title.

2. By the will, all the lands are devised to the respondents, no
charge merely is granted; nor is any express trust created for
the heir at law. By the plea, all holding as trustee for the com-
plainant is denied.

Our possession under this will, then, is a possession under
colour and claim of a title in fee, contrary to the title of the heir
at law.

It is said, however, that the will is void by the English mort-
main acts, and so, not capable of being the basis of an adverse
possession. For the purpose of this argument we allow the will
to be void: by virtue, not of the mortmain acts, but of the excep-
tion in the statute of wills, 34 Hen. VIII., ch. 5, which statute
was, in terms, re-enacted in New York to the time of the revision
of 1830, 3 R. S. (N. Y.) appendix 51.

But possession may be adverse if taken under a void deed.
Cases above cited; also, Jackson v. White, 13 Johns. R. 118;
Jackson v. Brinck, 5 Cowen R. 483; Jackson v. Woodruff,

1 Cowen R. 276; Jackson v. Wheat, 18 Johns. R. 40; Jackson v. Newton, 18 Johns. R. 355; Jackson v. Whitbeck, 6 Cowen R. 632.

But it is said this doctrine only applies to voidable and not to void paper titles.   Wills not conformable to the statute are always void.   If made by a joint tenant, an infant, a feme covert, or without three witnesses, they are void: but will not a possession under such wills, for more than twenty years, bar an ejectment?   Can the question of voidness be agitated after an indefinite lapse of time?   If so, such titles could never become confirmed by age; and wills, of all papers most liable to question from accident as well as want of skill in the writers, would be thrown out of the protection of the statute.

Again, it is urged, that being a religious corporation, it is against the policy of the law that their possession commencing under a forbidden title should ever become confirmed.   But all that the law does, is simply to make the will void; it does not declare, nor can it be construed as limiting the operation of such a statute as that of limitations.   This is doubting the statutory penalty, and that by implication.   Besides, this argument would apply to all corporations equally with religious; and to all conveyances equally with wills.   All the mass of property held by individuals, invested with corporate franchises, would be incapable of becoming sure by lapse of time.   It is not an open question as to this cause, that corporations, even religious, may acquire title by possession, although commencing by fraud and wrong. Humbert v. Trinity Church, 24 Wend. Rep. 587; also, 15 Wend. 111; decisions of a Court of last resort, binding this Court on a question of local law, Livingston's Lessee v. Moore, 7 Peters, 542; also, see 16 East, 5.

It is also urged that our holding these lands increased our annual income beyond our charter license.   By our answer we show it not to be so at the time of our entry and at the date when we allege our adverse possession.   Any subsequent or intermediate increase is not within the prohibition.   2 Inst. 722, on the statute 39 Eliz. ch. 5; recognised also Vankliech v. Dutch Church, 6 Paige, 621, affirmed in error, 20 Wend.

As to our fraudulently keeping down the income by making long leases at low rents, and selling at a premium, and investing it; it is denied in the plea and supporting answer.

3. But it is urged, that supposing the will valid, a trust is created which is not within the statute of limitations nor barred from lapse of time.

No express trust in favour of the complainants appears on the face of the bill. If a trust exist at all, it is for the ministers of the Dutch church : it is not a trust for the complainants ; and an implied trust is subject to the bar of lapse of time. Hovenden v. Lord Annesley, 2 Sch. and Lef. 624 ; Cholmondeley v. Clinton, 4 Bligh. (O. S.) 1 ; 2 Jack. and Walk. 138 ; 2 Meriv. 173, 357 ; Provost v. Gratz, 4 Wheat. 494 ; 7 Wheat. 116. In truth, however, it is not a trust, but a charity ; and if so, all surplus will go in augmentation of the charity : it being clear that the land is wholly given away from the heir at law. Attorney-General v. Wilson, 3 Mylne and Keen, 362 ; Thetford School Case, 8 Rep. 130 ; Attorney-General v. Brazen Nose College, 8 Bligh. N. S. 377 ; Attorney-General v. Haberdasher's Company, 4 Bro. Ch. C. 106 ; Attorney-General v. Sparks, Ambler, 201. And lands given to a charity may be aliened through the aid of Chancery if for the benefit of the charity. Dutch Church v. Mott, 8 Bligh. 458 ; 7 Paige, 79.

The counsel also referred to the Statutes of Limitations, 21 Jac. 1, c. 16, fr. Bul. N. P. 102 ; 1 Rev. L. N. Y. 185, sec. 2, 3, 5, (1813) ; 2 R. S. 292, (1830) ; also sec. 49, 50, 51. 52 ; Bradstreet v. Huntington, 5 Peters, 402.

No formal defects of the plea are pointed out : the answer supports the plea by meeting every matter in the bill stated as tending to countervail the plea by qualifying the possession : if such answer is too general, that is subject of exception ; the plea will not be defective on account of the answer ; unless material allegations are left unanswered, not where they are answered but not with sufficient minuteness. Story Eq. Pl. 516, 536, 674, 675. 692.

Mr. Coxe, in reply. The large amount of property involved in this case, and zeal and ability with which the defendants have resisted the complainants' demand, have conferred upon it an importance, to which it never could have attained had the subject of the controversy been less valuable, or the principles of law at issue between the parties alone been considered. The complain-

ants are humble citizens, obscure and unknown; the defendants a wealthy and powerful corporation. They are, moreover, a religious body; professing, and it does not become me to intimate that these professions are not sincere, to appropriate their revenues as well as their services in the most praiseworthy objects of human attention. These circumstances are calculated to inlist the sympathies of all our best affections.

Independently of these circumstances, the complainants have been unexpectedly deprived of the services of the distinguished counsel under whose advice this suit was originally instituted, and by whom it has until this its last stage been conducted, and by whom it was hoped it would be brought to a satisfactory and successful close. At this late and critical point in the case, they have been prevented by circumstances unforeseen and unavoidable to be absent; and the entire weight of this responsibility has thus been devolved upon counsel comparatively strangers to the case. All that we can ask or hope, therefore, is, that due allowances shall be made for our situation, that the points of law which the case presents shall be thoroughly considered, the authorities on either side maturely weighed; and in full confidence that this will be done we find compensation for our own weakness in the learning and wisdom of the Court.

It becomes important in such a case to bring our minds to a distinct understanding of what constitute the real and substantial points at issue between the parties. The bill was filed by complainants in March, 1839. It avers in substance that John Haberdinck, together with four other persons named in the bill, were, prior to the 14th September, 1696, seised in fee simple as tenants in common, of a certain tract of land in the city of New York, then known by the name of the "Shoemakers' field or lands." Being so seised, these parties made a division of part of said land into one hundred and sixty-four lots, leaving a residue which still remained undivided, made partition among themselves of the one hundred and sixty-four lots, assigning to each tenant in common his particular portion in severalty, and continuing their joint interest in the undivided part. That a deed was made and a map of the property, effectuating and showing this proceeding.

John Haberding thus became seised in severalty in fee of certain of these lots and cotenant in common of the undivided por-

2 R 2 60

tion.  Prior to the 7th February, 1723, John Haberding and his wife both died without issue.  The complainants and one Peter Harpending are averred to be his heirs at law; and that no legal conveyance of 'any description has been made of said property, but that the same descended to and vested in the said complainants and Peter Harpending as his heirs, who as such are absolutely seised of and entitled to said lands.  That John Haberdinck in his lifetime made a lease of the said premises or a part there-- of for ninety-nine years or some other long term, the details of which as well as the date are unknown to complainants.

That defendants have for some time past been in possession of all the lots so held by Haberdinck in severalty, and have stated and claimed that they held under some devise or will of Haberdinck.  That defendants are a religious corporation, incorporated under the laws of New York.  That they have also obtained possession of the undivided lot, and allege that they have acquired it under some of the tenants in common.

Complainants have applied to defendants, 1st, For an admission or statement of the will of Haberdinck, under which they claim to hold, and for permission to inspect and read the same; to enable them to proceed at law for the recovery of the property. 2d, For a list or schedule of the several lots held by them or their tenants under colour and pretence of title, derived from Haberdinck, and for any lease or assignment to them, and for the rent roll and an account.

That defendants pretend that John Haberdinck was not so seised in fee, the contrary is charged by complainants to be the truth.  That they held and now hold under a will of said John Haberdinck, and in pursuance of this allegation they did on or about the 7th March, 1822, in conformity with a statute of New York, make an account or inventory of their property, and return the same to the Chancellor, in which they represent that they hold said lands under the will of said John Haberdinck, (prout the same.)  They aver said last will and testament of John Haberdinck, to be a valid and lawful instrument, sufficient to vest said property in them; whereas complainants producing the will of John Haberdinck duly proved, 7th February, 1723, aver it to be null and void; that it is in contravention of the law of the land,

but that nevertheless defendants entered and held, and continued to hold said land under it.

That defendants at times pretend that they entered under a claim of title adverse and hostile to that of John Haberding, Jr., and have always held under such claim, and thus have acquired a valid title, whereas complainants charge the contrary to be true, and aver that defendants entered under certain leases of said John Haberdinck now expired, or under some other title derived from him and subordinate to his title and that of complainants, his heirs, and particularly under some long lease which expired between 1810 and 1822; that as late as 1810, in making a return and inventory of their property in conformity with the statute, they represent the same to be held by them under a devise of John Haberdinck.

The bill then sets forth the charter granted to defendants in May, 1696, setting forth the object of the incorporation; the power granted of holding lands within the amount of two hundred pounds or five hundred dollars per annum. That the annual value of the lands held by defendants at the date of the charter, and for twenty years past, has been at least ten thousand dollars. That the lots claimed by defendants under John Haberdinck are of great value, greatly exceeding what by law they were authorized to hold; from 1780 to 1800 of the yearly value of ten thousand dollars; from 1800 to 1820, of the yearly value of twenty thousand dollars, and from 1820, they have been of the yearly value of thirty thousand dollars.

It avers the entire invalidity of the devise and the incapacity of defendants to take and hold the land; but that if this be not so, that the devise is for a specific object, the maintenance of the minister of the church then held by defendants in Garden street, which was the only church held at the time of the devise under the charter: that this church has long since been extinct; the same having been sold by defendants, and that there being no minister such as alone was contemplated by testator, the object of testator's bounty has ceased to exist, and a trust results to the heir. That at all events the object of the bounty was a precise one; no benefit was conferred or designed to be bestowed directly upon defendants; but a simple trust for the maintenance of the minister; and that should this trust be a valid one, the revenues

arising from these lands, have, for a series of years, largely exceeded what was required for this purpose, and that complainants are entitled, if the immediate devise to defendants be prohibited, and therefore void, to have the estate either subject in their hands to this trust, or discharged even of that.

The bill avers then a primâ facie case in the complainants. By not demurring to the bill, it is admitted that the case thus exhibited is primâ facie a case of right in them. It is met by a plea, which, so far as it is material to examine it on the present occasion, and exclusive of the disclaimer of a portion of the premises, is a mere naked assertion of an adverse possession for forty years. It avers that for all the time commencing forty years prior to the filing of the bill, viz., 25th March, 1799, until the time of filing the plea,

1. That defendants have been by themselves and their tenants in the sole and exclusive possession.

2. During all which time of possession, the lands have been improved by buildings, and enclosed with a substantial enclosure.

3. During all this time defendants have actually occupied and possessed said lands, claiming and enjoying the same as being seised thereof in fee-simple, and in their own sole and exclusive right.

4. During all this time they have been in the sole and exclusive possession, receipt, and enjoyment of the rents, issues, and profits, &c., claiming the right to receive and enjoy the same.

5. As to a portion of the land, they aver that more than forty years since they sold it, and have received the money for their own use.

6. In general terms, they traverse the particular right set up by complainants.

So far then as there are affirmative averments made in the plea and answer; the defence set up is, in its whole length and breadth, an assertion of a possession for forty years under a claim of title. So far as it negatives or traverses the averments in the bill, it denies any join estate with complainants, or as trustee for complainants, or under any lease from complainant's ancestor, or under any title subordinate to that of complainants.

Independently of the averments in the bill which are thus met by the plea and answer, there are others which are not covered

by either. Among these it is only necessary to advert to some of the more important. It is not denied that the original entry of defendants was avowedly under and by virtue of the will of John Haberdinck; that as regards a part of the premises, they originally entered under the title of parties claiming to hold as tenants in common with complainants' ancestor; that they aver they hold under the will of John Haberdinck, set out in the bill; that in March, 1822, they recognise the will of John Haberdinck as the foundation of their then title; that the will set out in the bill is the last will and testament of John Haberdinck, under which defendants claim to hold; that they did not originally enter under a title adverse to that of complainants; that they have always held and now hold under a title subordinate to that of complainants' ancestor; that defendants were not competent to take and hold under a devise from John Haberdinck, that if competent to take at all, it was merely as trustees for a specific purpose; that the income of the estate is far larger than is required for the specific purpose designated in the will, viz., the maintenance of a minister or ministers; that the church in Garden street is no longer in existence, nor is there any minister of such church.

The averments in the bill are full and precise upon all these points, and not being traversed in the plea or answer, they are impliedly admitted to be true. This is a well-established principle of equity practice. Mitford, 295; 2 Dan. Ch. Pr. 98; Sto. Eq. Rep. 538, sec. 694; Bogardus v. Trinity Church, 4 Paige, 178; 2 Sch. and Lef. 727.

With all these averments unanswered, defendants set up as their sole ground of defence the possession of forty years, without any assertion of a patent, deed, agreement to convey, or other document to give validity or even colour to their original entry and subsequent holding; without any allegation of an ouster of the cotenants in common, and without any specification of the time when, or the circumstances under which the original character of the possession became changed and assumed a hostile type.

This we conceive to be both defective in form and insufficient in substance.

1. The defectiveness in form is not so material, but as our learned opponents have asserted the formal sufficiency and propriety of the pleadings, it may be as well briefly to examine this

position.   The plea presents a single point of defence to the en-
tire bill, to the prayer for discovery and the prayer for an account,
to the claim of a tenant in severalty and that of a cotenant in
common with defendants; to the title of complainants as founded
upon the original invalidity of the will which lies at the root of
defendant's possession, and that which asserts a right as cestui
que trust, either to the whole property, or to so much of it as
may remain after fulfilling the specific trust created by the will.
If this plea is bad as to one of these foundations of claim it must
be overruled.   Now, it is unnecessary to advert particularly to
the New York statutes of limitations.   They have been read to
the Court.   It may be as well, however, to remark that the sta-
tutes of limitations in their terms apply only to suits at law, and
that equity by analogy extends their provisions to suits in Chan-
cery.   That these statutes prescribe different terms of limitations
to suits of different characters, one period is fixed as a bar to an
account, another to an ejectment, &c.   There is no one applicable
to each and every of the claims of complainant.

Nor is there any statute of limitations of New York which
prescribes the term of forty years as a bar to any species of ac-
tion, or to any kind of recovery.   Twenty years, the bar to eject-
ment, is the longest period applicable to either of the demands
now set up, to some of them, especially a case of resulting trust in
favour of the heir upon the termination of the object of the bounty
provided for by the testator, or for the surplus after fully meeting
that trust, it is believed that no statute of limitations exists in
New York, nor has this Court of Equity established such a
bar.

Even in reference to those parts of the case to which those
statutes create a specific bar, there being no such period as forty
years fixed, but a shorter period; the plea of forty years is vicious,
inasmuch as it tenders an immaterial issue.   The forms of plead-
ing in Courts of Equity are not so precisely fixed as at common
law, but there are certain precise rules founded in reason, which
must and ought to govern both.   There is no better criterion by
which to judge of the sufficiency of a plea, than that which is
furnished by the inquiry, will its decision finally and necessarily
decide the case?   If a party pleads a bar of forty years, when
the statute makes twenty or six years a bar, it results necessarily

[Harpending v. The Dutch Church.]

that the decision upon the fact against the party pleading it..is immaterial.   Com. Dig. tit. Pleader.

2. The more important question, however, is, is this plea insufficient and consequently bad in substance ?   We apprehend it is, both from the defects of the plea in general and especially under the circumstances averred in the bill.

There have been certain general principles laid down by the counsel for the appellee, which it is unnecessary for us to controvert in the. abstract.   It is stated as a principle of law that an adverse possession may be pleaded as a bar against the recovery by a tenant in common.   In this abstract form the proposition is not denied.   It may, under circumstances, be a good defence, in others it may not.   There must be something superadded, such as ouster of the cotenant to render it available.   While we admit that it may be made an effectual bar, we deny that in all cases it necessarily is so.   If, then, the addition of such circum- stances be essential to the validity of this plea, in the absence of those circumstances, or without the proper averment of them, the plea is defective.   5 Wheat. 116, 124; 7 Wheat. 120; 24 Wend. 587, 602.

So in certain cases even a trust interest may be barred by the statute of limitations, but so far from this being the general rule, the reverse is the case, and it is only under special circumstances that such a bar is available by a trustee against his cestui que trust. Wherever the relation of trustee and cestui que trust is distinctly created, is real and substantial, and not merely the creature of implication, where equity will recognise its existence and enforce its obligations, the possession by the trustee cannot be converted into one of an adverse character, and lapse of time will interpose no bar.   The trust is here averred in the bill, it is denied by counsel in argument, but neither the plea nor answer controvert the allegation.   The bill also contains the precise averments which show the legal existence of a trust.   These averments are unnoticed in the plea or answer, and must consequently on this argument be assumed to be true.   Nor is there any weight in the. objection raised by counsel in the argument, that the claim of a trust is incompatible with the general scope of the bill.   That bill is framed with a double aspect ; one of the views which it presents is, that if it was the design of the testator to provide a

.·fund for the specific purpose mentioned in his will, which is clearly the case from the strong affirmative as well as negative words employed by him, if no bounty was designed beyond this specific purpose of maintaining a minister or ministers, if the defendants could take the property devised as trustee, then after performing this duty, and executing the design, the surplus belongs to the heirs, and the relationship of trustee and cestui que trust is established between complainants and the church. So if the object of the bounty ceases to exist, as is also charged in this case, Courts of Equity do not regard the forms of instruments, they look to the substance and the intent, and give that construction which is consistent with such intent. Flagg *v.* Mann, 2 Sumn. 487; Levin on Trusts, 168, &c. Where lands are devised for a specific purpose, as for the payment of legacies, after the trust is fulfilled, there is a resulting trust in favour of the heir at law. 2 Powell on Dev. 32; Culpepper *v.* Aston, 2 Ch. Ca. 115, 223; 9 Mod. 171; Roper *v.* Ratcliffe, 2 Eq. Ca. Abr. 508. So when a devise is made to trustees for a specific or particular object, and that object does not require the application of the entire fund or exhaust the whole appropriation, the surplus will be decreed to the heir even though a legatee. 2 Powell on Dev. 34, 35; Starkey *v.* Brooke, 1 P. Wms. 390; Ambl. 165; 3 Dow. 148. Nor is the trust alleged in the bill one which by writers on equity law is designated as a constructive trust, where a party for the furtherance of justice will be decreed to hold a particular estate a trustee for the rightful owner. Boone *v.* Chiles, 10 Peters, 177. The very instrument which creates the estate, by its own force and legal interpretation clothes it with the trust, first for the minister intended to be provided for, after this for the heir. When such a trust is once fixed upon the party, the trustee cannot defend himself against his cestui que trust on the plea that he holds adversely, for he shall never be permitted to create in himself an interest opposed to that of his cestui que trust. Prevost *v.* Gratz, Peters' C. C. Rep. 364.

This part of the case, then, resolves itself into a simple question of construction. What is the true interpretation of the will? We think it clear, that whatever estate, if any, passed to the church, was purely a trust. No beneficial interest was designed for it, unless a merely incidental one. It was to create a fund for the

single and exclusive purpose of paying the salary of the church in Garden street. This purpose, it is averred upon one construction of the will, has ceased to exist, and the specific trust is at an end; on the other, that it does not exhaust the fund, but leaves a large surplus, and this surplus is claimed by the heir. These averments are not controverted by the pleadings.

Another of these general propositions asserted by the respondent's counsel, is, that a corporation, even one of a religious character, may hold an adverse possession, and thus acquire title. In the abstract this is not denied—such may be the case. It, however, by no means follows that every possession by a religious corporation will be regarded as such an adverse possession as will furnish it with a shield against the rightful owner.

The complainants contend, that this capacity in the respondents is limited and restricted. 1. Under no circumstances will it be available, when in the case of a natural person it would not be. Wherever, from the character of the possession, a private individual would be precluded from interposing such a defence; as, for example, where he held as tenant in common or as trustee, it will not be allowed to the artificial person. 2. Where the acquisition of property is prohibited by the charter itself, and the corporation could not legally take and hold by actual conveyance, adverse possession cannot confer title. That cannot be indirectly acquired, the direct acquisition of which is inhibited. If, then, this religious corporation is incompetent to take by express devise, if the will would be null and void, an entry under it cannot ripen by lapse of time into a title. 3. It is wholly unimportant and inconsequential whether this prohibition be found in the charter itself, or in a different and general statute. If the statutes of wills or the statutes of mortmain prohibit the corporation from taking by will, the prohibition is as effective as if it were done by the charter itself. New York v. Utica Ins. Co., 15 Johns. 355.

In some respects, the restrictions upon a corporate body in thus acquiring title, are greater than exist in relation to private persons. By way of illustration, it may be suggested, that when a natural person has disseised a rightful owner, and dies seised, by this casting of the descent the heir succeeds to a higher species of title than his ancestor had. So, if a corporation should by purchase acquire the title of the original disseisor, or after descent cast, of

his heir, this might furnish a good title by adverse possession. But the possession originally acquired by a corporate body, can never, in its own hands, thus ripen and strengthen. The vice of the original trespass adheres to it so long as that possession lasts.

We are further told in argument, that the respondents have been in possession of this property, claiming and holding it as the rightful owners, from the year 1723, now nearly a century and a quarter; and that equity will raise any presumption to support such a possession: that to uphold it a colonial license may be presumed to take the case out of the prohibition of the statute of wills. This suggestion admits of many answers. In the first place, it involves a total departure from the defence set up. That defence is a possession of forty years, and this furnishes no ground for such a presumption. But no presumption can arise of the existence of an act which could not legally have been performed, and would have been purely void if it existed. The colonial government had no authority to grant such a license, dispensing with the prohibitions of the statute. The doctrine of these dispensing licenses has been misapprehended. In England this dispensation was a peculiar act of royalty. The general prohibition was founded on the principle that these grants of land to corporations and in mortmain were detrimental to the lords, by depriving them of their escheats. The king, the ultimate lord, was peculiarly injured by these alienations, and he was permitted by his license to ratify the grant so far as to remit the penalty to himself. He could, however, by this license only waive his own rights, he could not effect those of other or intermediate lords. Nor even in England were such licenses given in cases of wills.

It is contended that the possession of defendants, as alleged in the plea, being under a claim of title in fee simple, is an adverse possession, and creates a complete bar to complainants' recovery. In other words, the proposition is, that the character of adverse is recognised by the law as attached to the possession averred in the plea, throughout the whole continuance of that possession, and that this is a sufficient answer to the bill. Let us analyze this plea. The specific averments are these: 1. For all the time commencing forty years prior to the filing of the bill, viz., 25th

March, 1799, until the filing of the plea, defendants have been and are in the exclusive possession, &c. 2. That during all this time the lands have been improved by buildings and enclosed with a substantial enclosure. 3. That this possession and occupation have been accompanied by a claim and enjoyment of the premises as owners in fee in severalty, in their own right and not otherwise. 4. The receipt and enjoyment of the rents, issues, and profits, to their sole and exclusive use. 5. As to other of the lands, they aver, without specification of date, circumstances, or party, a sale for a valuable consideration, and the receipt of the purchase-money by them.

The great question in the case is, that these facts thus pleaded constitute a sufficient answer to the primâ facie case set up in the bill. Respondents aver that these facts operate per se to bar complainants' recovery. To test this, let it be put into a logical and tangible shape. The proposition is, that a possession for forty years, of lands improved by buildings, substantially enclosed, under a claim of title in fee simple, the sale of a part and the receipt of the rents of the residue to the sole use of defendants, constitute, per se, a valid adverse possession, which confers title at all events and under all circumstances. This is the proposition we are to encounter.

This bar is alleged, notwithstanding the particular averments in the bill, which are, by implication, admitted to be true. 1. That defendants are under a legal disability to take or to hold the land. 2. That the original entry and the holding for a series of years was in subordination to the bill asserted by complainants. 3. That defendants have solemnly and deliberately within these forty years recognised their title as taken under complainants' ancestor. 4. Without any averment as to the original character of this possession, or when or how it became adverse. 5. Without the averment of any deed, will, or other document of title; without any allegation of ouster of the cotenants in common; without any derivation of title from a prior adverse possessor. It is not averred that the improvements by building, or the enclosure, were the acts of defendants. It is not alleged that the claim of right was public or notorious, or within the knowledge of complainants, or of any other persons. It is, therefore, a mere naked possession. That this is not sufficient, is well established.

Jackson v. Sharp, 9 Johns. 163; Jackson v. Waters, 12 Johns. 365; Le Frambois v. Jackson, 8 Cowen, 598; Livingston v. Peru Iron Company, 9 Wend. 511; Thomas v. Marchfield, 13 Picker. 240; Summer v. Child, 2 Conn. 607; Cottrell v. Watkins, Jurist No. 4, Oct. 1839, 281.

The next proposition is somewhat more specific. It is alleged that a claim of the fee simple under a void documentary title, if accompanied with possession, constitutes an adverse possession, and creates a bar. No distinction is here taken between the defects to which the original documentary title may be subject. We concede that where the deed, &c., is merely defective, and therefore in itself incompetent to pass an estate, it may yet be so far operative as to give a colour to the party holding under it, and serve as the basis of a title by adverse possession. On the other hand we assert that where this deed is essentially void as prohibited by law, it never can support or give adverse character to the possession acquired and held under it.

The doctrine of respondents asserts a principle wholly at war with the fundamental principles of all codes of law and private morals. It assumes the power of time to convert that which is essentially wrong into right. It allows the laws to be violated not only with impunity, but with recompense. It is at variance with the principle upon which all statutes of limitations rest. These statutes are emphatically statutes of repose. They proceed upon the doctrine that length of possession and lapse of time warrant the presumption that such possession originated in right; that the evidence has been lost. They thus assume to supply what is imperfect, not to cure what was essentially illegal: "never," to use the language of this Court, "to enable one man to steal the title of another by professing to hold under it." Kirk v. Smith, 9 Wheat. 288; Ricard v. Williams, 7 Wheat. 107.

In the case at bar, the void character of the title under which respondents entered and held is established by the admissions on the record. It has been adjudged to be with the express prohibition of the law. This illegal title is admitted by the return to the chancellor set out in the bill, to be that under which defendants hold. That the declarations of a party as to the character of his title and possession are competent evidence, is conceded by

the adverse counsel in one branch of their argument, but if denied is established by high authority.　7 Wheat. 111; Paine, 467.

No grant or conveyance can be presumed which is not in accordance and harmony with these declarations.　7 Wheat. 112. Presumption can never fairly arise of the existence of a deed when all the circumstances upon which it must rest are perfectly consistent with its non-existence.　Jackson *v.* Porter, 7 Wheat. 109; Paine, 457, 464.

The whole current of authorities sustains our proposition, that no possession can, by lapse of time, acquire the immunities attached to an adverse possession, when it had its inception in that which the law prohibits.　Kirk *v.* Smith, 9 Wheat. 283, 541; 9 Wend. 511, 516; 7 Wend. 152; 4 Dana, 479; 9 Cowen, 361, 543; 5 Cow. 346; 6 Cow. 751; 13 Johns. 537; 10 Johns. 462; 12 East, 141; 8 Cow. 590, 606, 610, 617, 621; Ball. on Lim. (Tillingh. edit.) 374.

The distinction which has been attempted will not bear examination.　It is said that the cases in which this proposition has been asserted, are only those in which the entry has been made under a foreign title, and therefore in hostility to the sovereignty of the state; or where the title was fraudulent in its inception. The authorities do not justify or sustain this restriction.　The cases of the Canadian grants were adjudged illegal, because derived from a foreign power, and being invalid, they were insufficient to support the possession.　The illegality was the basis of the judgment.　In this case the will was in the face of a peremptory statute prohibition, in that class of cases the illegality was only implied.

We are now told that the statutes of mortmain which have been invoked by complainants are not in force in New York; and 2 Merivale, 143, is cited to sustain the assertion.　The same case was cited in 20 Wend. 480, to sustain the same proposition, and it then received a conclusive answer.　This question is not however now open for discussion; the devise is conceded to be illegal and invalid; that this will is the foundation of respondent's title is admitted.　The question is, can a title, originating in an act distinctly prohibited, become effective and valid by lapse of time.

It has not been thought important to dwell particularly upon

2 s 2

the allegations in the bill which relate to the inventory and return made by respondents to the Chancellor of New York. One of these represents their title as derived under a demisé of John Haberdinck; and this alone is noticed in the answer, in which it is averred to be a clerical error. What was the nature and extent of that error, or how it occurred, is not stated. Obviously it was the mere mistake of using the word demiso for deviso; for in relation to the second return in which they represent themselves as holding under the will of John Haberdinck, the answer does not even notice it.

Under these circumstances it is submitted that the defence set up is essentially defective both in form and substance.

Mr. Justice CATRON delivered the opinion of the Court.

The respondents rested their defence below on a plea in bar; that they had been in actual adverse possession of the premises, in regard to which they are asked to account and make discovery, for forty years next before filing of the bill. The plea was sustained; and from the decree there was an appeal presented to this Court by the complainants.

1. They insist the plea is bad in form: and

2. Insufficient in substance.

The first objection to the form of the plea is, that it does not rely on twenty years' adverse possession, but on forty years; twenty years being the time of holding adversely to constitute a bar by the statute of New York. In this respect there is no technical rule observed by the Courts of Chancery. If the complainant by his bill, or the respondent by his plea, sets forth the facts from which it appears that the complainant by the statutes of the state has no standing in Court, and for the sake of repose and the common good of society is not permitted to sue his adversary, it is the rule of the Court not to proceed further, and dismiss the bill. Had the complainants set out the fact of forty years' adverse possession, then a demurrer interposing, the bar would have been the proper defence, countervailing circumstances aside. Such was the course taken in Humbert v. Trinity Church, 24 Wend. 587, and which was in accordance with the established practice of Courts of Chancery.

2. It is insisted that the act of limitations is not relied on by ex-

press reference to the statute of New York. We think it was unnecessary to rely in terms on the statute. It was more convenient not to do so. The bill seeks discoveries, the right to have which twenty years' adverse possession could only bar. It also seeks an account of the proceeds of sales of parts of the estate, and an account of the rents and profits of other parts, assuming the respondents to be trustees for the complainants. To this aspect of the bill six years forms the bar to a decree. The Court is judicially bound to take notice of the statutes, when the facts are stated and relied on as a bar to further proceedings if they are found sufficient. So the Chancellor of New York held in Bogardus v. Trinity Church, 4 Paige's Rep. 197; and we think correctly.

3. In regard to the substance of the plea, it is insisted for respondents, 1. That the answer does not cover and support the plea by the denial of facts alleged by the bill which, if true, obviate the bar. That, taking the facts alleged as established by admission, then the respondents were express trustees for the complainants, held possession for them, and are compellable to account regardless of the lapse of time.

To test the sufficiency of the answer we must take every allegation of the bill as true which is not denied by the answer: and then inquire whether, those facts being admitted, the plea is sufficient to bar the claim to relief set up by the bill. 4 Paige's Rep. 197; Mitford, 300; Plunket v. Parson, 2 Atk. 51; 15 Ves. 377.

The complainants charge certain circumstances, which if true preclude a bar, without admitting the existence of the bar; yet, alleging facts which obviously stand in the way of relief unless the circumstances be true. They have the undoubted right to call on the defendants to furnish by their answer the evidence that they did hold the church estate as express trustees; and under and for the respondents. These facts would invalidate the plea if admitted, and the defendants must answer to all the matters which are specially alleged as evidence of these facts. Nor would the denial in the plea serve the purposes of the complainants, for on setting it down for argument, its truth must be admitted. Story's Eq. Pleadings, 515, sec. 672, 673; Beames's Pleas in Equity, 33, 34.

Have the respondents furnished the evidence claimed from

them, or, have they repelled the circumstances by a sufficient denial of their existence? If unanswered, the circumstances must be taken as true for the purposes of resisting the plea, (as already stated,) to the extent that they stand unanswered.

The bill alleges that John Haberdinck, in 1696, jointly with four others, were seised in fee simple of a tract of land called the Shoemaker's field, lying on the north-east side of Maiden lane, in the city of New York. In 1696, the parties divided the premises, in part, into lots; and the other tenants in common conveyed to John Haberdinck in severalty his one-fifth part of the lands divided, which are severally described by lots.

That, previous to 1723 Haberdinck died, leaving no children. John Haberdinck, Junior, was the lawful heir of John, Senior; and the complainants are descendants and heirs of John the younger.

That no sale or devise of the premises has ever been made by any of the ancestors of complainants through whom they claim; and that they are entitled and seised as heirs at law and by right of succession.

That the Reformed Dutch Church of the city of New York, by its ministers, &c., had had possession of the premises held in severalty by John Haberdinck, and claimed to have taken possession under some will or devise of John Haberdinck, whereby the premises were devised to them.

The first circumstance stated in evidence of the bar is that John Haberdinck in his lifetime had let the premises, or some part thereof, to lease for ninety-nine years; and that the lease expired in 1819. When the bill was filed does not appear by the record. We take it, within less than twenty years, after 1819. To whom the term of ninety-nine years had been granted, the bill does not in this part of it allege.

The defendants deny all knowledge of the existence of any such lease; except for three lots to William Huddleston dated in 1723 for the term of seventy years, from the first of May of that year; and this lease is not thought to be genuine. This answer we deem sufficient.

It is next alleged that the ministers, &c., of the church are a religious corporation, duly incorporated and located in the city of New York; and as such, obtained by purchase from some of the

tenants in common with John Haberdinck the elder, or from some one claiming under them, parts of the Shoemaker's field not partitioned in 1723.

This allegation needed no answer in support of the plea. One tenant in common may well hold adversely to, and bar his co-tenant.

The complainants also allege they appl d to the corporation for an inspection of title-deeds; an account of sales; of rents and profits; for possession of the lands, and a partition of the undivided part; which had been refused.

If barred to the right of the land, so were the complainants of the relief sought by their request to the corporation. Nor has the contrary been assumed. As to title-deeds, none but the lease for ninety-nine years could have aided the complainants; and the distinct answer that none such existed covers this allegation.

As a supervening circumstance, complainants allege that respondents in 1822 acknowledged they entered and held under the will of Haberdinck the elder, by an account and inventory of their property rendered to the Chancellor of New York, pursuant to a statute of that state.

The will is then set out, dated 1722, by which the property was devised to the ministers, elders, &c., of the church, and their successors forever; with its probate: and the devises therein, to the religious corporation, are alleged to be illegal and void; that no title was taken under the will; and that the possession was held in subordination to the right and title of the heirs at law. It is reiterated, that the corporation entered as assignees under leases for long terms of years, made by John Haberdinck, in his lifetime, and which have lately expired; or, under some other title derived from John Haberdinck, and subordinate to the title of the heirs at law; but particularly under a demise by Haberdinck to the ministers, deacons, &c.; or to some other person which was assessed to them, and which expired between the years 1810 and 1822. And under some title, subordinate to that of the heirs at law, the respondents have ever claimed, held, and enjoyed the premises. That so late as the year 1810 they admitted by an inventory returned to the Chancellor, that they held under a demise to the corporation by John Haberdinck. The charter

62

granted by the king in 1696, is substantially set forth, and it is averred the annual profits of the premises devised, exceed two hundred pounds, or five hundred dollars, the extent to which the church was permitted by law to receive profits; that from 1780 to 1800, the yearly value of the premises was ten thousand dollars; from 1800 to 1820, twenty thousand dollars; and from that time to the date of the filing of the bill, of the yearly value of thirty thousand dollars.

That to keep down the rents, long leases have been given at low rents; and then the leases have been sold out, and other lands purchased with the proceeds of the sales, and other investments made. That a religious corporation, which is by law incapable of receiving or taking lands by devise, cannot hold adverse possession of such lands upon which they have entered and always claimed under such devise. This being the case of the respondents, the complainants were entitled, as heirs at law, to rents and profits and the proceeds of sales; at least after deducting therefrom a support for the ministers of said church, which the income greatly exceeded, and to which extent and no other, by the terms of the will, could the revenues and income of the devised premises be applied. And a discovery and account is asked of the surplus, if no more.

As to parts of the premises the defendants disclaim title; and as to other parts, they plead they had sold and conveyed in fee simple more than forty years before the filing of the bill; and the alienated lands had ever since been held and enjoyed under the conveyances adversely to the claim of the complainants.

To such parts of the foregoing allegations as charge in any form a holding in subordination to the title of complainants as tenants in common, or, by demises or otherwise, the respondents answer in various forms, that they claim to hold for themselves in severalty and in fee simple, and in hostility to the claim set up in the bill, for forty years next before it was filed; that they never acknowledged any title in the complainants, and that the expression in the return to the Chancellor, that they held by demise under John Haberdinck, was a clerical error.

Respondents neither admit nor deny that they held under the will of John Haberdinck; nor that they have received revenues and profits, as charged. These facts are treated as immaterial.

Not being answered as repelling circumstances, they must be considered as true.

The plea avers that for forty years previous to the time of filing the bill, that is, from 1799, and up to the date of the plea, the defendants had been by themselves and their tenants, in the sole and exclusive possession of all and singular the lands in the bill mentioned, (except those disclaimed,) during all of which time, all and singular the said lands have been improved by buildings, and enclosed with substantial enclosures, and actually occupied by themselves and their tenants, claiming and enjoying the same as being seised thereof in their demesne as of fee in severalty, and in their own sole and exclusive right, and as the exclusive and sole owners thereof, and to their own sole and exclusive use, and not otherwise: and that respondents have, in like manner, been in the receipt of the rents and profits.

As to that part of the premises alleged to have been sold, respondents plead that more than forty years before the filing of the bill, thus being in possession in their own right and severalty, and claiming the right to sell and convey in fee simple, absolute, did grant and convey the same in fee simple, absolute, for a valuable consideration to them paid, and which the corporation applied to its own use, claiming the right to do so without any accountability to any person whatever; and the said premises have ever since been held, occupied, and enjoyed under said conveyances, adversely to the claim of the complainants, in their bill set forth.

Stripped of the circumstances met by the answer, and the case presented to us for decision is simple.

The complainants claim under Haberdinck the elder, as heirs at law. The respondents entered under the will of Haberdinck, and have for more than a century claimed under it. The complainants allege the will is void: the respondents disregard the allegation as immaterial, and raise no question on its validity.

They rely on forty years' adverse possession, claiming to hold for themselves in fee simple, and in severalty. To cover the possession no paper title is invoked, substantial enclosures and actual occupancy for forty years are relied on in substitution of a valid paper title.

The plea having been set down for argument, the facts it

assumes must be taken as true; and we are called on to pronounce the law on the facts.

The defence set up is independent of the complainants' case, and purely legal in its character, in so far as the bar is sought to protect the possession of the lands, supposing this to be the relief prayed. This is not the case, however; the title seeks, 1. An account of the rents and profits; 2. An account of the proceeds of such parts of the lands as the corporation has sold; 3. The production of the title papers and rent rolls, appertaining to the estate; and, 4. A discovery of the amount of the proceeds by rents and sales, through a series of years: treating respondents as trustees for the complainants.

As these are incidents to the title, if it is confirmed in fee simple to the respondents by force of the statute of limitations of the state of New York, and the complainants are barred of their recovery at law of the estate, the incidents of rents, proceeds of sales, and discovery of title papers follow the title, aside from the shorter bar of six years in regard to the money demands. At the end of twenty years, from 1799, when the adverse possession commenced if the statute of limitations applied to the case made by the plea, the defendants had a title as undoubted as if they had produced a deed in fee simple from the true owner, of that date; and all inquiry into their title or its incidents was as effectually cut off.

Complainants contend that in 1722, a devise to a corporation for the purpose of maintaining religion was void, where the income from the property bequeathed exceeded two hundred pounds, being contrary to the statute of wills of Henry the Eighth; therefore, the will of John Haberdinck was inoperative, and the premises descended to the heir at law. Nor could the corporation take by deed more than by will. Having no capacity to take by will or deed, and the operation of the act of limitations being a confirmation of a supposed paper title from some one of the whole premises, the corporation, in like manner, wanted capacity to take by force of the act of limitations; which would be in equal violation of the statute of Henry the Eighth.

On this assumption the bill is obviously founded: and it is, in fact, the only question in the cause.

[Harpending v. The Dutch Church.]

Respondents insist, on the other hand: 1. That the devise was to a charity, and therefore not embraced by the statute of Henry the Eighth; 2. That bodies corporate are excluded from the statute of Henry the Eighth, by the statutes of the state of New York; 3. That there is no allegation in the bill that the income of the devised premises was worth more than two hundred pounds in 1722, when the will took effect; and if the will was valid then, it continued to be valid afterwards, according to 2 Inst. 722; 4. That we are bound to presume, after the lapse of more than a century, the existence of a colonial statute authorizing the bequest; and which has been destroyed by time and the accidents of the Revolution in the government.

These considerations are mere incidents in the controversy as it is presented to us; none of them seem to have been conclusively settled by the decisions of the State Courts of New York, and therefore we express no opinion upon them.

It may be true, that in 1722 the corporation of the Protestant Dutch Church could not take, and yet in 1799 it was enabled by the statutes of New York to take and hold the premises. If so, time could confirm the title, because of the newly created capacity.

Be this as it may, we are bound to conform to the decisions of the State Courts of New York, in the construction of their acts of limitation. Such is the settled doctrine of this Court. Green v. Neal, 6 Peters, 291. The Chancellor of New York held, in Bogardus v. Trinity Church, 4 Paige's Rep. 178, that the corporation could make defence, and that it did take title by force of the act of limitations. The Court of errors held the same in Humbert v. Trinity Church, 24 Wend. 587. As no distinction is made by the State Courts of New York between a religious corporation and an individual in regard to capacity to hold by force of the statute, and none can be taken by this Court.

It is only left, then, to consider whether a naked possession is protected by the statute to the extent of the substantial and actual enclosures, for all the time necessary to form the bar.

The statute of New York is in substance the same as that of the 21 Jac. 1; that such a possession as is set forth by the plea is protected by the statute, has been the settled doctrine of the Courts of that state for more than thirty years; if it ever was doubted.

Vol. XVI.—2 T

We need only refer to Jackson v. Shoemaker, 2 Johns. Rep. 234; Jackson v. Wheat, 18 Johns. Rep. 44; Jackson v. Woodruff, 1 Cowen, 285; and Jackson v. Oltz, 8 Wend. 440.

These cases were at law, and the statute is equally binding on the Courts of Chancery, where the complainants seek to have an account of rents and profits accruing out of a legal estate. This is also settled by the State Courts of New York: In 4 Paige's Rep. 179, by the Chancellor; and in 24 Wendell's Rep. 587, above recited, by the Court of Errors.

We therefore concur with the Circuit Court that the first part of the plea must be sustained, for so much as it covers.

The second part of the plea, averring that all the parts of the lands sold had been conveyed, and the moneys received by the corporation more than forty years before the plea was filed, we deem a conclusive bar. The bill seeks the money, and six years barred relief; this being a concurrent remedy with an action at law.

For all the lots disclaimed by the answer and plea, the bill was properly dismissed; there was no probable cause for retaining it to obtain an account from the respondents; obviously no claim exists that can be made available for complainants in regard to this portion of the property. Mitford's Pleadings, 319.

We order the decree below to be affirmed.