Thurman, J.
The complainants contend that the conveyances from Freeman and Denman to their ancestor, Joel Williams, ^invested him with a perfectly equitable title to two undivided third parts of the premises in controversy -. that Israel Ludlow was seized of a like title to the remaining third; that John C. Symmes held the naked legal title, in trust for their use and for no other purpose; and that no dedication of the premises was made prior to the recording of the town plat in 1802. If this is so, it follows that the conveyances made by Symmes, in 1797 and 1798, to the trustees of the church and the county respectively, were, unless authorized by William's, plain violations, by Symmes, of his duty as trustee; and the titles asserted under these conveyances were and are adversary to the title of the complainants.
Now, considering that when these conveyances were executed Williams was a resident of Cincinnati; that they were recorded soon after their execution; that he must be presumed to have had notice of them; that he lived until October 29, 1824, a period of over twenty-six years, without ever attempting to impeach them or to disturb the possession taken under them; that a further period of twenty-four years, making over fifty years in all, elapsed before this suit was brought; that, in all that time, no claim to the prem *424 .ises appears to have been made by Williams or Ludlow, ortbe heirs of either, and that the property was, during this period, largely built upon and improved by Symmes’ grantees or those claiming tinder them; we would have no difficulty in presuming that the grants were made by the direction or with the consent of Williams, were it not that certain allegations of the bill seem to imply that he did not so acquiesce. It is averred that he “ was prevented from interposing a check to the first erection of buildings, on the dedicated property, not contemplated by the proprietors in making the dedication, in consequence of the minority of Ludlow’s heirs, the youngest of whom (Israel Ludlow) did not attain majority until May, 1825,” several months after Williams’ decease. It is by no means clear that this averment is sufficient to prevent the presumption of acquiescence. Probably it is not. But let it be deemed sufficient, and it results that *the possession under Symmes’ deeds was an adverse possession, and that the claim of complainants is barred by lapse of time, unless the bill shows some reason that negatives such a bar. The reasons assigned by counsel are
First. That it does not -appear by the bill that the misuser of the property claimed by the Presbyterian Society commenced in the ■lifetime of Williams.
But the quotation above made from the bill shows that the alleged misuser of some part, if not the whole of the eight lots, did commence in his lifetime; for it is averred that he was prevented from checking it by the infancy of Ludlow’s heirs. Now, if this user was not of the lots, or some parts thereof, claimed by the Presbyterian Society, then there is nothing in the bill to rebut the presumption that Williams acquiesced in, or even directed the conveyance to the trustees of the Society. The allegation above quoted is the only one that tends to show his dissent; and if that does not apply to the lots of the church, then no dissent is directly or indirectly averred, and there is nothing to prevent a presumption of consent or acquiescence. It may be said that the recording of the town plat in-1802 is evidence of dissent, since the eight lots are thereon designated as reserved for a court-house, a jail, a church, .and a school. But the proving and recording this plat was not an original act of dedication. Williams and Ludlow made no dedication by it. On the contrary, the bill expressly avers, and to the same effect is Williams’ oath to the plat, that it was made out in- *425 strict accordance with the original plat made by the first proprietors of the town, and which had been lost or destroyed. The reservation or dedication took place, therefore, when the town was laid ■out it 1789. The second section of the territorial law, cited in the bill, under which the plat of 1802 was made and recorded, or rather .attempted so to be, had reference solely to towns already laid out, and to the recording of plats of such existing towns. It had no relation to towns, or parts of towns, to be subsequently laid out, or • dedications to be subsequently made. They are provided for in other parts of *the act. And this is an answer, if one were needed, to the argument of complainants’ counsel, that the proprietors in 1789 had no sufficient title to the land on which the town was laid out to enable them to make a valid dedication. Other .satisfactory evidence might be given ; but it is enough to say that, if they made no dedication, none was made at all. For Williams did nothing more than prove and record, or rather attempt to prove and record a copy of the original plat. We call what he did an attempt, because he states in his affidavit that his plat is made out ■agreeably to the original plat, plan, design, and intentions of Den-.man, Patterson, and Filson, who, he says, were the original proprietors of the town. Now, the bill shows that the town was not laid out until after Filson’s death, and that the proprietors were Den-man, Patterson, and Dudlow. But, whoever were the original proprietors, it is obvious that proving and recording in 1802 what had been done in 1789 is no evidence that Williams did not acquiesce in the conveyances made by Symmes in 1797 and 1798. Whether he consented or not to those conveyances, it is evidently proper to prove and record a copy of the original plat, and just as proper in the one case as in the other.
Again : If the allegation in the bill, in reference to the buildings .erected in Williams’ lifetime, is so ambiguous as to leave it altogether uncertain whether they stood on the lots claimed by the -church, or on those claimed by the county, or some on one and some on the other, the rule, that where a pleading admits of either of several constructions equally well, that construction is to be adopted which is least favorable to the pleader, will authorize defendants to insist, if it is to their advantage to do so, that the buildings were some upon the county lots and others upon the church lots .and that thus the alleged misuser was of the whole property, and commenced in the lifetime of Williams. ■
*426 Another answer yet remains. If it is true, as contended by complainant’s counsel, that there was no dedication by the original proprietors, then, as we have shown, there was no dedication at all, And if it is also true, as contended by *the same counsel, that, when Symmes made his said conveyances, Williams was seized of a perfect equitable title to two-thirds of the granted premises, it follows that it is wholly immaterial what the use was that commenced in his lifetime; for, in the case supposed, any use of the premises by the defendants, was a violation of his right. Now, it is nowhere denied in the bill that the grantees of Symmes took immediate possession. It is not necessary to affirm the proposition asserted by the defendants’ counsel, that the law presumes, in 'the absence of averment or proof, that actual possession accompanies the legal title. Possibly, this maybe so; but we are not obliged to-decide the question. For we think it fairly inferable, from the allegations of the bill, that immediate possession was so taken, and that-it has been held ever since by the grantees of Symmes and those-claiming under them.
The second reason assigned why lapse of time is no bar, is that some of Ludlow’s heirs were infants during Williams’ lifetime; and that, for a long time after his death, the complainants were uninformed of their rights.
It is impossible to see how Williams’ delay could be excused by the infancy of Ludlow’s heirs. If he had any interest in or control over the property, it was competent for him to assert his right without their being joined as plaintiffs in the suit. They are not plaintiffs in the present bill, and for the same reason that the complainants may proceed without them, their ancestor might have so-proceeded.
As to the ignorance of the complainants, it can not avail them. Time had began to run against their claim in the lifetime of their' ancestor, who was under no disability and was cognizant of his-rights. Indeed, whatever equity he may have once possessed, had become stale before his death. He suffered over twenty-six years, to elapse, after the execution of Symmes’ deeds, without asserting-any claim against them, or to the possession held under them. In all that time, he took no step to acquire the legal title, or the possession, or to prohibit the uses to which the property was .applied,, or in any manner to supervise or control it.
*The third reason assigned is that there is no bar to a re *427 covery on the ground of forfeiture, unless twenty-one years have elapsed since the forfeiture.
This reason rests upon the assumption that the property was dedicated in 1802, and has been forfeited by misuser. But we are now considering the case as if no dedication was ever made, a view we are compelled to take, by the argument, that the property was not dedicated by the original proprietors. If it was not dedicated by them, it was not dedicated at all, ás we have before stated.
But let it be granted that it was dedicated in 1802, as complainants contend, and let it also be admitted, as they assert, that a misuser worked a forfeiture; how, then, stands the case ? The misuser, and consequently the forfeiture, took place in the lifetime of Williams. Time, then, began to run against him, and over twenty-four years expired before this suit was brought. So that, upon the complaniants’ own propositions, they are barred. But what ground is there for saying there has been a forfeiture ? Plainly none at all. The uses- declared by the alleged dedication, adverse rights aside, are neither obsolete nor impossible of execution. They are pei'petual uses, and the right is vested in a perpetual corporation or corporations. Neither the county nor the city are temporary creations. They yet exist, and must continue to exist. They must have a court-house and jail, not’only now, but forever, and the people must always have churches and schools. The law on this point is well stated in “ Barclay v. Howell’s Lessee,” 6 Pet. 507. The court said:
“ If this ground had been dedicated for a particular purpose, and the city authorities had appropriated it to an entirely different purpose, it might afford ground for the interference of a court of chancery, to compel a specific execution of the trust, by restraining the corporation or by causing the removal of obstructions. But, even in such a case, the property dedicated would not revert to the original owner. The use would still remain in the public, limited only by the conditions imposed in the grant.”
*To the same effect is Webb v. Moler, 8 Ohio, 552.
The fourth reason given is, that the deeds of Symmes convoyed but life estates, which have terminated by the deaths of the last survivors, and the legal title is now in Symmes’ heirs, as trustees; and it is said that where a trust is broken, and then something is done which is a full bar to the cestui que trust, yet the lands coming *428 afterwards to tbe trustee’s hands, he will be decreed to convey to the cestui que trust.
As to the deed to McClure and McCullough, trustees of the county, if it were admitted that it conveyed but a life estate, the admission would not avail the complainants. Eor McClure, the survivor, died in 1820, in the lifetime of Williams, and twenty-eight years elapsed thereafter before this suit was brought.
But is it true these deeds conveyed nothing but estates for life ?
In Oates v. Cooke, 3 Burr. 1684, it was held that a devise containing no words of perpetuity passed a fee, because it was upon trusts that required a fee to support them.
In Newhall v. Wheeler, 7 Mass. 188, the case depended upon the ■construction of a deed made by Joshua Simonds to Samuel Cummings and others, selectmen of Hollis, and their successors in office, for the use,'benefit and behoof of Josiah Hunt, and after his decease, if any of the premises should remain, then to Hunt’s heirs forever, to hold for the use aforesaid, at the discretion of the grantees, with a warranty against all persons claiming under Simonds, the grantor. The selectmen were not an incorporated body. The court, after distinguishing between a use and a trust— (a distinction that is immaterial in the present case, as the statute of uses has never been in force in Ohio, 7 Ohio, pt. 1, 275,) held that the deed passed a fee to the grantees. Parsons, Ch. J., delivering the opinion of the court, said: “ We are of opinion that the selectmen, who were the immediate grantees, took the legal estate n trust for Josiah Hunt and his heirs.” . . . “As the estate of the grantees was in trust, it must be ^commensurate to the trust, and therefore was an estate in fee simple.”
In Stearns v. Palmer, 10 Metc. 32, which was an action of trespass, the deed was to Moses Bliss and others, “ in trust to and for the use of the inhabitants of the first parish in Springfield for a burying ground forever.” “ To have and to hold the said land and premises to them, the said Moses, Zenas and Ariel, in trust to and for the use of the inhabitants of said first parish and their heirs forever, for a burying yard,” with a covenant that the grantor would warrant the premises unto the grantees, “ in trust as aforesaid, to and for the use of the inhabitants of said first parish and their heirs forever as a burying yard, as aforesaid.” The grantees were not a corporation, and there were no words of perpetuity in the granting part of the deed. The courtsaid: “Another objection to the plain *429 tiff’s title is, that the trustees took only a life estate by the conveyance. But this grant was in trust ‘ for the use of the inhabitants of the first parish in Springfield, and their heirs forever fora burying yard.’ And it is a well settled principle, that as the immediate grantees took the legal estate in trust, it must be commensurate to-the trust. 7 Mass. 188. No form of words is required to create a trust. A trustee, or cestui que trust, will take a fee without the word “ heirs,’ when a less estate Will not be sufficient to satisfy the purposes of the trust. Oates v. Cooke, 3 Burr. 1684. Fisher v. Fields, 10 Johns. 505. Welch v. Allen, 21 Wend. 147. But the words ‘ their heirs,’ in the deed in question, may be construed as-applying to the immediate grantees, and ought to be so construed, if necessary to effectuate the clear intention of the parties. And there can be no doubt that the intention was to convey an estate in> fee simple.”
Gould v. Lamb, 11 Metc. 84, is to the same effect. The court said : “ The objection to the title is, that this conveyance did not create a fee simple estate in Mark Healey, it not being a conveyance' to him and his heirs; the words 1 heirs ’ being absolutely necessary to create a fee simple; *and this is the general rule undoubtedly. But to this, as to all general rules, there are exceptions.” The court then specify divers exceptions, among which' is the case of a trust requiring a fee to feed it, in reference to which they say, that “it is a well settled rule of construction, that where the legal estate is conveyed in trust, it must be commensurate with the trust,” citing Newhall v. Wheeler, and Stearns v. Palmer.
The same principle was fully recognized by the court of errors-of New York, in Fisher v. Fields, 10 Johns. 505. Kent, delivering the unanimous opinion of the court, said: “A trustee or cestui quetrust will take a fee, without the word heirs, when a less estate will not be sufficient to satisfy the purposes of the trust. This has been frequently ruled in chancery, and the court of King’s bench, during-the time of Lord Mansfield, made the same decision at law.” In support of this statement, he cites numerous cases, to which it is-unnecessary to refer, and then adds: “But what puts this point beyond all doubt is the doctrine of the common law on the subject of uses and trusts. Before the statute of uses, if a man had bargained and sold his land for a valuable consideration, without inserting the word heirs, the court of chancery would have decreed an execution of the use in fee, because the use was merely in trust and- *430 confidence, and because this was according to the conscience and intent of the parties. But after the statute of 27 Hen. VIII, as the uses were transferred and made a legal estate, a different rule took place (1 Co. 87, b. 100 b). A trust is merely what a use was before the statute of uses. It is an interest resting in conscience and ■equity, and the same rules apply to trusts in chancery now, which were formerly applied to uses. And in exercising its jurisdiction -over executory trusts, the court of chancery is not bound by the technical rules of law, but takes a wider range in favor of the intent •of the party. This principle seems to be well established, and it has been ably vindicated by Fonblanque.”
The same doctrine was held by the supreme court of New York, in Welch v. Allen, in ejectment, 21 Wend. 147.
*In the light of these decisions, the soundness of which there is not much room to doubt, let us examine the deeds in question. The first deed is to Moses Miller and others, trustees for the Presbyterian congregation of Cincinnati, “ and their successors forever,” “for the use, benefit, and behoof of the aforesaid congregation forever,” with a covenant that Symmes and his heirs will warrant ■and forever defend the premises unto the grantees and their successors. Now, certainly, no language could more clearly declare a perpetual use or trust. The property is for the use of the congregation “forever,” and the covenant of warranty is unlimited. The intention of the parties is placed beyond a doubt. A fee simple was plainly meant to be conveyed, and the deed must have that effect, if we follow the cases above cited, unless some fact exists that renders them inapplicable.
The complainants’ counsel contend that such a fact does exist, namely, that the congregation was unincorporated at the date of the grant, and that therefore the trust was void for uncertainty as ■to the beneficiaries. In support of this proposition we are referred to the case of “The Baptist Association ©.Hart’s Executors,” 4 Wheat. 1, in which it was held that the association, being an unincorporated body, did not take by a devise to it in trust for the education of youths for the ministry; in other words, that, not being a body corporate, it could not, as a society, hold property as a trustee; .and that the legacy could not be sustained as a charity. But this decision is greatly shaken, if not wholly overruled, by the subsequent cases of Bratly and Ritchie v. Kurtz, 2 Pet. 584; Inglis v. The Sailors’ Snug Harbor, 3 Pet. 99; and Vidal v. Girard’s execu *431 tors, 2 How. 127. In the latter case, Judge Story, delivering the opinion of the court, very fully reviewed it, and showed that it rested upon two grounds that distinguished it from the case then under ■consideration, and which distinguished it also from the case before us. “There are,” said the judge, “two circumstances which materially distinguish that case from the one now before the court. The first is, that that case arose under the law of * Virginia, in which state the statute of 43 Eliz. ch. 4, had been expressly and entirely abolished by the legislature, so that no aid whatsoever could be derived from its provisions to sustain the bequest. The second is, that the donees (the trustees) were an unincorporated association, which had no legal capacity to take and hold the donation in succession for the purposes of the trust; and the beneficiaries were also uncertain and indefinite. Both circumstances, therefore, concurred; a donation to trustees incapable of taking, and beneficiaries uncertain and indefinite.” And even these grounds, the judge proceeds to demonstrate, form, to say the least, a very doubtful support to the decision.
But in Ohio legislation has constantly tended to the same end as the statute of Elizabeth; and in the case before us, there is not that concurrence of circumstances—a grantee incapable of taking, and beneficiaries uncertain and indefinite—upon which so much stress was laid in the Baptist Association v. Hart.
It is unnecessary, however, for us to go beyond the decisions of our own courts, which, we thifik, are quite conclusive upon this question. In the very well considered case of the Trustees of the McIntire Poor School v. The Zanesville Canal and Manufacturing Co., 9 Ohio, 287, the court said : “ But one of the earliest demands of every social community upon its lawgivers, at the dawn of its civilization, is adequate protection to its property, and institutions which subserve public uses, or are devoted to its elevation, or consecrated to its religious culturo, and its sepulchres ; and in a proper case the courts of our state might be driven into the recognition of some principle analogous to that contained in the statute of Elizabeth, as a necessary element of our jurisprudence. 2 Story’s Eq. 389 ; 17 Serg. & R. 88 ; 9 Cow. 437. But, without reference to these considerations, where a trust is plainly defined, and a trustee exists, capable of holding the property, and executing the trust, it has never been doubted that chancery has jurisdiction over it, by its own inherent authority, not derived from the statute, nor result *432 ing *from its functions as parens patrice. The property devised in this case consisted, of land, personalty, and stock in theZanesville Manufacturing Company; the legal ownership of this-was either in Mclntire’s executor or heir. The condition on which the device ever took effect was the death of the daughter without issue. The objects of the testator’s bounty were the poor children-of Zanesville, and the benefit intended was their education. There is no doubt that a trust attached to the property, whoever might hold it; for whenever a person by will gives property, and points out the object, the property, and the way it should go, a trust is-created. And a bequest of land to A, to construct an asylum for aged sailors, although inefficacious to pass the legal title, sufficiently defines the trust, and charges the heirs with its performance. 3 Pet. 119, 152; 1 Story’s Eq. 415; 4 Wheat, appendix. The position, therefore, taken by the heirs in the plea, that the land descended to them, on the death of the daughter, absolved from the trust, is-not supported, but overruled.
This decision was fully approved by this court, at the present term in the case of Urmey’s ex’rs v. Wooden, in which a devise in these words: “ The remainder of my estate I do hereby give and devise to the poor and needy, fatherless, etc.,” of two townships named, “to such poor-as are not able to support themselves, to be-divided as my executors may deem proper without any partiality,” was held to be valid and effectual for the purposes therein expressed.
We are therefore clear that the trust in question is not void for-uncertainty as tó the beneficiaries. The trustees were capable of taking, and it is admitted, they took a life estate at least, and the-beneficiaries were easily to be ascertained. And when the latter-were afterwards incorporated, the corporation became the beneficiary. And whether the legal title has gone to the heirs of the trustees, or to the heirs of Symmes, it remains subject to the trust. In the language of the court, in the case above cited from 9 Ohio, the “ trust attached to the property, whoever might hold it.” That is-*to say, whoever derives title under Symmes is affected by the trust.
With these authorities before us, we would have no" difficulty in holding that a legal estate in fee passed by Symmes’ deeds, were it not for the case of Miles v. Fisher, 10 Ohio, 1, in which it was held that a devise to trustees who were unincorporated, and their successors, in trust for certain perpetual uses, invested them with a *433 life estate only. But it is to be observed that the question whether they took a fee, does not seem to have been argued, and the case, as to the point now under consideration, is possibly of doubtful authority. But, be this as it may, it can not avail the complainants. For, the court, in express words, declared “ that the charity might subsist and cling to the land, whether the legal title be held by the trustee or the heir.”
The same result will be arrived at by following the eases of Terrett v. Taylor, 9 Cranch, 43, and Mason v. Muncaster, 9 Wheat. 445, in which it was held that, “ although the church wardens of a parish (the wardens being an unincorporated body), are not capable of holding lands, and a deed to them and their successors in office, forever, can not operate by way of grant; yet, where it contains a covenant of general warranty, binding the grantors and their heirs forever, it may operate by way of estoppel, to confirm to the church and its privies the perpetual and beneficial estate in the land.”
The trust created by the deed to the trustees of the county, is-not declared, in express words, to be forever; but a fair construction of the whole instrument irresistibly leads to the conclusion that a perpetual trust was intended, and that the conveyance was designed to pass a fee. The receipt of the consideration money is admitted, and the grantees, McClure and McCullough, and their executors, successors, and assigns, are acquitted and discharged thereof; the property is granted to McClure and McCullough, “ in trust for the uses and purposes thereof intended by the people of the said county of Hamilton,” with all the privileges and appurtenances “ for public purposes, and for the use of the people of the *county of Hamiltonto have and to hold, etc., “ as trustees for said county of Hamilton for all public purposes,” and the covenant of warranty is with McClure and McCullough, and their heirs and successors in trust,” to warrant and forever defend the premises against all lawful claims whatsoever. Now, it would not, perhaps, be going beyond what the court, in Stearns v. Palmer, above cited, thought might be done, to hold that the word “ heirs,” in this covenant of warranty has the effect to extend the granting clause in the deed to the heirs of McClure and McCullough. But we are not called, upon to so rule, for we are satisfied that the principles we have applied to the other deed will, when applied to this one, produce a *434 like result. Besides, as we have already said, the county is plainly protected by lapse of time.
But were it admitted that these deeds are ineffectual to pass a legal estate in fee, there is yet another difficulty in the way of the ■complainants. That they were designed to convey a fee can not, with any reason, be denied; and such being the fact, a court of equity will not lend itself to defeat the intent. In a proper proceeding they might be reformed, if necessary, and if that would be done, the complainants can not found an equity upon their defects. Piatt v. St. Clair, 7 Ohio, pt. 2, 169.
It is said, however, that the grantees or those claiming under them have no equity, because it is averred in the bill and admitted by the demurrers, that the considerations expressed ip the deeds have never been jDaid. We do not agree that it is so admitted. 'The allegations in the bill are simply that the complainants have ■heard and so charge that there has been no payment. But “ it has been determined, upon demurrer, that it is not a sufficient averment ■of a fact in a bill to state the plaintiff is so informed.” Mitford’s PI. 40, note 9 ; 1 Yes. 56. Be this, however, as it may, we think it will be time enough to inquire about this non-payment when the ■heirs of Symmes complain of it. And should they so complain, they would perhaps find that, as their ^ancestor acknowledged the payment by his deeds, and as he, or they, without asserting any claim, have stood by for over fifty years and seen the property ■occupied and improved by the grantees and those holding under them, it is now too late to question the fact of payment.
Entertaining these opinions, we see no benefit that could result "to the complainants from a decree against Symmes’ heirs for the legal title, supposing it to be in them. If it is in them, they are •estopped by the covenants of their ancestor from asserting it .against the trusts created by his deeds; and whoever claims under them must be in like manner estopped.
But it may be said that, if the defendants have only an equity, then there is equity against equity, and the complainants’ equity being prior in time is stronger in right. To this it is a sufficient answer that the-complainants’ equity, if it ever existed, is stale, while the defendants’ is in full force and vigor.
The next reason given why lapse of time is no defense, is that ¡the alleged misuser was a fraud.
It is undoubtedly true that there are cases of fraud that render *435 this defense unavailable; as where a person has been misled by the misrepresentations of another, or kept in ignorance of his rights by one who ought to have disclosed them. But there is nothing of this kind in the case before us. The general allegation of combination and confederacy, which is relied on by counsel, is not such an averment as to defeat the bar. That allegation had its origin in the idea that, without such a statement, new parties could not be added to the bill; but as the idea is erroneous, the allegation is unnecessary. Mitford, 33; Lube, 204. Where the injury complained of is the result of actual combination and fraud, they must be averred, not, in a mere general manner, but with the same precision that is ■required in other averments of fact.
The sixth reason is that, “ the case here presented is a pure technical trust, against which time will not begin to run so as eventually to operate as a bar, until after the trustee has legally and honestly divested himself of the trust.”
*This reason is founded upon the assumption, that the probate and recording of the plat in 1802 was a dedication, which, by ■force of the territorial law, invested the county with the equitable title of the premises, in trust for the purposes of the dedication. “ The trust in this case,” say counsel, u was cast upon the county by law—it can not divest itself of the trust by either neglecting or refusing to do its duty by a faithful execution of the trust, or by transferring the trust property to others.”
As before stated, we are now considering the ease irrespective of •any supposed dedication. We shall presently state our opinion whether there was a dedication, and when it was made, and examine the case under that aspect. But we may, without difficulty, digress so far as to consider the point just stated. We have already said that, in our judgment, there was no dedication in 1802. There was no attempt to dedicate then. All that Williams undertook to do was to prove and record what, he said, in substance, was a copy of the original plat of 1789. For the reasons already given, we think his acts were wholly nugatory. And we are of the same opinion for another reason. It appears from the bill that Ludlow was one of the original proprietors, and it is nowhere shown, either in the bill or in the probate of the plat of 1802, that he was not a resident of the territory, or that he was absent from it when that plat was proved and recorded. But unless he was dead (the bill shows that he was not) or had removed from the territory (which *436 does not appear) Williams had no right to make and record a plat.. It was only when the original proprietors were dead, or had removed from the territory, that a third person was authorized by the law to act.
Again, it does not appear by the bill that the defendants, or-either of them, have ever claimed or held the premises under the-supposed dedication of 1802. On the contrary, the bill shows the-derivation of their claims in the conveyances of Symmes. Now, although it is true, as a general rule, that, as between trustee and cestui que trust, lapse of *time is no bar, yet it is equally true that where the former, with the knowledge of the latter, disclaims the trust, either expressly or by acts that necessarily imply a disclaimer, and an unbroken possession follows in the trustee or those-claiming under him, fora period equal to that prescribed in the act of limitations to constitute a bar, such lapse of time, under such circumstances, may be relied upon as a defense. Speaking of the relations of landlord and tenant, mortgagor and mortgagee, trustee and cestui que trust, the supreme court of the United States, in Willison v. Watkins, 3 Pet. 48, said : “ The same principle (that governing landlord and tenant) applies to mortgagor and mortgagee, trustee and cestui que trust, and generally to all cases where one-man obtains possession of real estate belonging to another, by a recognition of his title. On all these subjects, the law is too well settled to require illustration or reasoning, or to admit of a doubt. But we do not think that, in any of these relations, it has been, adopted to the extent contended for in this case, which presents a. disclaimer by a tenant, with the knowledge of his landlord, and an unbroken possession afterward for such a length of time that the act of limitations has run out four times before he has done any act to assert his right to the land. Few stronger cases than this-can occur; and if the plaintiff can recover, without any other evidence of title than a tendency existing thirty years before suit brought, it must be conceded that no length of time, no disclaimer of tenancy by the tenant, and no implied acquiescence of the landlord, can protect a possession acquired under such a tenure.”
Apply these remarks to the present case. Symmes conveyed the property either with or without the consent of Williams. If with his consent, the complainants have clearly no estate. If without it, what higher act of disclaimer of Williams’ rights could have been performed ? Yet, with full knowledge of the facts, Williams *437 ■and his heirs quietly suffered an adverse possession to remain in the grantees and those claiming under them for more than fifty years. We say with full knowledge, because Williams was a resident of ^Cincinnati, the deeds were recorded, and knowledge of them is not denied. It would be difficult to find a stronger ■case for setting up the defense of lapse of time.
The next proposition of counsel is that, by force of the territorial law, the state is a guarantor of the faithful execution of the trust by the county, and that time never runs against the state.
We do not perceive that the state has any rights, or is under any liabilities, in the premises. If she has any rights, they will be considered when she asserts them. The complainants have no authority to assort them for her.
Lastly, it is urged that the defense of lapse of time must be set ■up by plea or answer.
It is clear, however, upon both authority and reason, that it is available upon demurrer. Harpending v. The Dutch Church, 16 Pet. 486; Humbert v. Trinity Church, 24 Wend. 587; Poster v. Hodgson, 19 Ves. Jr. 180, 186, note 1; 2 Ves. Jr. 83, note 2 (Sumner’s ed.); Story’s Eq. Pl. sections 484, 503, and note 4; Hovenden v. Armesley, 2 Sch. & Lefr. 636.
It remains for us to consider whether, upon the facts stated in the bill, there has ever been a dedication, for any purpose, of the property in controversy; and, if so, when it was made, and what, if any, is its effect in this suit. We have already so far anticipated these questions that but little need be added upon them. Taking the allegations of fact in the bill to be true—as we must, upon demurrer—it seems clear to us that there was a dedication by the original proprietors, in 1789, for the purposes of a court-house, a jail, a church, and a school. It is expressly averred that when the town was laid out, and the streets, alleys, and lots marked, in that year, a map thereof was made by the proprietors, on which they noted these eight lots as reserved for the purposes aforesaid. There is nothing in the bill that shows that this was a mere private note or memorandum, but, on the contrary, various facts that are alleged, in addition to those above stated, make it evident that it was designed as a dedication. This dedication *might well be valid, although the proprietors were not seized of a legal estate, and there was no grantee, in esse, to take a fee. This was expressly -decided in Cincinnati v. White, 6 Pet. 431, where the question was *438 as to the “ common,” on this same plat. And Brown v. Manning, 6 Ohio, 803, is to the same effect.
The dedication having been made then, in 1789, it is contended, by defendants’ counsel, that the subsequent conveyances, under-which Joel Williams claimed, transferred no estate to him in these eight lots; that they had become the property of the public, or, at least, that it could not have been the intention of the grantors to convey property that had been dedicated to public use. But we are not prepared so to decide. In Cincinnati v. White, the court seems to have regarded the dedication of the “ common ” as a grant of an easement only. Possibly the same view should be taken of the dedication, under consideration. If so, the equitable fee, subject to the easement, remained in the proprietors and was-transferable. And the conveyances under which Williams claimed were comprehensive enough to include it. When the dedication took place and these conveyances were made, there was no statute vesting in a town or county the fee in property dedicated to public-uses. The territorial law was passed afterward ; and the recording of the plat of 1802 was a nugatory act; the bill shows no record,, sufficient under that law, to vest the fee in the county. And we are-not prepared to say that it is matter of history, of which we can-officially take notice, that a plat was properly recorded pursuant, to the law; though what was said in Cincinnati v. Hamilton Co., 7 Ohio, pt. 1, 88, might seem to warrant our doing so.
But it is not necessary for us to decide these questions. Let it be assumed that an easement only was granted by the dedication,, and that, subject thereto, Williams became seized of the equitable fee, what right have the complainants to the relief they seek_ They are not entitled to the property itself, divested of the easement, for there has been *no forfeiture. Misuser or nonuser-does not, in a case like this, work a forfeiture, as we have already shown. Then, as to their claim to have the purpose of the dedication specifically executed, it is to bo remarked, in the first place, that they ask no execution of any uses declared in 1789. They rely on the supposed dedication of 1802, and pray that its uses may be enforced. But there was no dedication in 1802. So, the ground of their prayer utterly fails.
Secondly: The right to a public easement may be lost by an-adverse possession, just as a private right may be. We do not, of course, speak of easements belonging to the state. But, as against *439 counties, cities, and towns, the statute of limitations runs as it does against individuals. So it was held in Cincinnati v. The First Presbyterian Church, 8 Ohio, 298. That was an action of ejectment, brought to recover the four lots now in controversy, possessed by the churph. The city claimed under and in virtue of the dedication made by the proprietors of the town. The defendant set up the statute of limitations in bar. And the defense prevailed.
Now, it can not be maintained that the uses declared in Symmes’ deeds are the same as those expressed in the dedication. They are evidently much larger uses, and may be very different. The grantees of Symmes have, accordingly, held and improved the property, in derogation of, and adverse to, the dedication. They have covered it with a multitude of buildings not contemplated by the dedicators. And having thus adversely held it for over fifty years, and thus adversely used it for at least a quarter of a century, it is too late now to recur to the purposes of the dedication. They are gone by lapse of time, and the uses declared in Symmes’ deeds have taken their place.
The views we have taken of the case make it unnecessary to consider the claims of complainants to a visitorial power. We may remark, however, that neither they nor their ancestor have ever possessed such a power. The most he or they could do was to invoke the aid of the chancellor to enforce *the uses of the dedication; and if that right ever existed it has been lost by delay in asserting it. The demurrers must be sustained.
\