## SCOTT v. HERRELL.

EJECTMENT; ADVERSE POSSESSION; EVIDENCE; CLAIM AND COLOR OF TITLE; APPEALS; OBJECTIONS AND EXCEPTIONS; WILLS; WITNESSES; INSTRUCTIONS TO JURY.

1. Where the conceded question in an action of ejectment is whether the adverse possession of the person under whom defendants claim is sufficient to defeat the plaintiff's record title, the admission in evidence of a tax deed offered by the plaintiff, of a date subsequent to the ripening of such adverse possession, is not error prejudicial to the plaintiffs.

2. The plaintiff in ejectment may be defeated by proof of an outstanding title by adverse possession in another person; and it is unnecessary for the defendant to trace title from such other person, or to show in what right he claims, or any right whatever in himself. (Following *Reeves* v. *Low*, 8 App. D. C. 105.)

3. Title to land by adverse possession is as perfect as title acquired by deed from the record owner.

4. A lease of the land in controversy by the party under whom the defendants claim in an action of ejectment, and who they claim had title by adverse possession, is admissible in evidence as tending to show

claim of title by such party. (Following *Briel* v. *Jordan*, 27 App. D. C. 202.)

5. Where the plaintiffs in ejectment concede that a deed to the party claimed by the defendants to have title by adverse possession constituted color of title, it is not error prejudicial to the plaintiffs for the trial court, in its charge, in referring to a lease properly admitted in evidence as showing claim of title by such party, to use the terms. "color of title" and "claim of title" indiscriminately.

6. An assignment of error relating to the admission of certain evidence in an action at law, but not based upon an exception, will not be considered.

7. A copy of a receipt to a tenant for rent, given by the agent of the party who, the defendants in ejectment claim, had title by adverse possession, is admissible in connection with evidence identifying the lots described in it as those in controversy, where the objection to its admissibility is not because the paper is a copy, but because it does not in terms refer to the lots in controversy; and is incompetent and immaterial.

8. Where one of the three witnesses of a will is dead, and another is a non-resident, the execution of the will and the signature of the nonresident witness may be provided by the remaining witness. (Construing sec. 132, D. C. Code.)

9. In an action of ejectment, in which it is conceded that the plaintiff has the record title to the land in controversy, and the defense is adverse possession, a prayer for instruction offered by the defendant, containing a fair synopsis of the testimony relating to the facts claimed to constitute adverse possession, but not referring to the plaintiff's claim, is not open to the objection that it selects for the jury detached and inconclusive facts and circumstances favorable to the defendants.

No. 1788.   Submitted February 7, 1908.   Decided March 31, 1908.

HEARING on an appeal by the plaintiffs from a judgment of the Supreme Court of the District of Columbia, upon verdict, in an action of ejectment.                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

In this action of ejectment, brought by appellants, Leander and William L. Scott seek to recover each an undivided one

third interest for life, and Julian F. and Corinne L. Scott together an undivided one-third interest in fee simple, in lots 7 and 8 in square 1107 in this city.

The suit was instituted against Henry A. Herrell and John F. O'Neill, trading as H. A. Herrell & Company, they having been in possession of the lots, but subsequently the Capital Syndicate Company was made defendant as to lot 7.

At the trial the plaintiffs, to prove their title, first introduced the original records of the War Department showing that said lots, "in the division between the original proprietor and the United States, were allotted to Abraham Young," the plaintiffs' predecessor in title.

The defendants, under their plea to the general issue, introduced evidence tending to prove title in Frances H. Ball by adverse possession. The first evidence offered was a deed from Charles H. Ball *et ux,* and John T. Ball to said Frances H. Ball, dated February 25, 1868, duly recorded, purporting to convey said lots in fee, and which plaintiffs conceded constituted color of title. There were then introduced in evidence the following:.

"(b) Tax deeds from the District of Columbia to T. M. Hanson, dated March 9, 1875, recorded in Liber 781, folios 102 and 104, purporting to convey in fee the same property.

"(c) Deed from Thomas H. Hanson *et ux.* to Frances H. Ball, dated March 25, 1875, recorded in Liber 780, folio 103, purporting to convey in fee the same property.

"(d) Record of a tax sale Jan. 22 to 31st, 1889, dated Feb. 9, 1889, recorded in Liber 1558, folio 368, of same property, assessed to Frances H. Ball, sold to B. L. Walker.

"(e) District of Columbia to Bartow L. Walker, tax deed dated March 25, 1891, recorded in Liber 1562, folio 437, purporting to convey in fee, same property, assessed to Frances H. Ball, sold January 22, 1889.

"(f) Record of a tax sale Apr. 11th to 22d, 1893, recorded May 1, 1893, recorded in Liber 1797, folio 466, lot 8 in square 1107, assessed to F. H. Ball, and sold to Montgomery Clagett.

"(g) Deed from Bartow L. Walker to Paul J. Brant, dated

Nov. 1, 1894, recorded in Liber 1967, folio, 344, conveying all right, title, and interest of the party of the first part in and to all real estate in the District of Columbia.

"(h) Deed from Paul J. Brant to Virginia Alabama Co., dated Dec. 29, 1894, recorded in liber 1984, folio 25, conveying all right and title of party of the first part in and to all real estate in the District of Columbia.

"(i) Record of deed from Paul J. Brant to Virginia Alabama Co., dated March 28, 1895, recorded in Liber 2004, folio 4, conveying as next above.

"(j) Record of a tax-sale report, 1895, recorded May 4, 1895, in Liber 2002, folio 1, lots 7 and 8, square 1107, assesed to B. L. Walker, sold to Allen C. Clark.

"(k) Record of a tax deed from the commissioners of the District of Columbia to Montgomery Clagett, dated May 3, 1895, recorded July 15, 1895, Liber 2033, folio 326, purporting to convey in fee lot 8 in square 1107, assessed to F. H. Ball, for year ending June 30, 1892, sold April 13, 1893."

An exception was noted by plaintiffs to the introduction of the three deeds lettered "g," "h," and "i," upon the ground that the description therein is too indefinite to constitute color of title.

Garnett S. Brown, a nephew of said Frances H. Ball, was thereupon called as a witness for defendants and produced the following tax and tax-redemption receipts, which were put in evidence:

## Tax Receipts.

| Years. | Names. | Lots. |
|---|---|---|
| 1877 to 1880 | Frances H. Ball | 7 to 11 |
| 1891 | Frances H. Ball | 7 to 11 |
| 1892 | Garnett S. Brown | 7 |
| 1893 | Bartow L. Walker | 7 to 11 |
| 1895 and 1896 | Bartow L. Walker | 8 to 11 |
| 1896 to 1900 | Bartow L. Walker | 7 |
| 1897 to 1902 | Montgomery Clagett | 8 to 11 |

Redemption Receipts.

Year 1894 assessed to Bartow L. Walker, lots 8 to 11, sold April 9, 1895, redeemed July 15, 1895.

Year 1895, assessed to Bartow L. Walker, lot 7, sold April 18, 1896. Redeemed May 22, 1896.

The witness, having testified that his aunt was dead, identified the following lease as having been in the possession and custody of his aunt during her lifetime:

This indenture, made this 30th day of March in the year of our Lord eighteen hundred and sixty-seven between Frances H. Ball, of the one part, and Leonidas Scott, of the other part, all of the city, county, and District of Columbia.

Witnesseth, that the said Frances H. Ball doth hereby let unto the said Leonidas Scott, his heirs and assigns, certain lots of land in the city aforesaid, together with all and singular the buildings and improvements thereon, and known as lots seven, eight, nine, ten, and eleven in square 1107, as numbered on the map and plan of said city, for the term of six years from the 1st day of September, 1866, for the yearly rent of thirty-three and one-third dollars; and in addition to which the said Leonidas Scott doth hereby bind himself, his heirs, executors, administrators, and assigns to pay, or cause to be paid, the yearly corporation taxes that may become due and payable thereon; and at the expiration of said term the said Leonidas Scott, his heirs and assigns, shall and will quietly and peaceably surrender and yield up to the said demised premises with the appurtenances thereunto belonging to the said Frances H. Ball, her heirs and assigns.

In witness whereof the said parties have hereunto set their hands and seals the day and year hereinbefore written.

Frances H. Ball.    (Seal)
Leonidas Scott.    (Seal)

Witness:   J. F. Callan.

The certificate of the notary before whom the lease was ac-

knowledged was attached thereto. This lease was temporarily received by the court, its admissibility to be determined at a later stage of the trial.

After introducing records from the office of the assessor of the District of Columbia showing assessment of said lots for taxes during a part of the controverted period (to the introduction of which no exception was noted), the witness Brown was recalled and testified that his deceased uncle, R. L. Stanton, formerly collected rent for Frances H. Ball on said lots. Witness was familiar with his uncle's handwriting and identified the following as having been written by him:

Copy.

Washington, D. C. April 30th, 1883.

Received of James Jones for Mrs. Frances H. Ball, $25, in part payment of rent, taxes, &c., for the use of certain lots in square 1107, Washington. The whole indebtedness being $52, which amount includes the rent of said lots for one year from April 30, 1883, to April 30, 1884, on condition that the said Jones shall pay Mrs. Ball the balance of $27 on the first day of June, 1883.

R. L. Stanton,
Agent of Mrs. Frances H. Ball.

Plaintiffs objected and excepted to the introduction of this paper on the ground that "it does not in terms refer to the lots in controversy; also on the ground that it is incompetent and immaterial." Witness knew that Jones had paid rent to Mrs. Ball for the lots; Jones came to witness's house to see Mrs. Ball about the lots; after her death Jones looked after lot 7 for witness.

Several witnesses were then introduced who testified, in substance, that, immediately after the Civil War, several colored men, Gantt, Jones, Thompson, and said Leonidas Scott occupied all of said square 1107 as a brick-yard. The square was then entirely inclosed with a wire fence which remained for about twenty years. There was a kiln on lot 8 and a stable on lot 7. Just how long Scott was connected with the firm is uncertain,

but it does appear that Gantt and Jones continued the business down to 1893, when they sold to one Thomas Potee, who was soon succeeded by H. A. Herrell & Company, the defendants herein. Both lots from 1868 to the time this suit was instituted were continuously occupied in connection with the brickyard. Active operation would be suspended during a part of the winter months, but during such periods of inactivity someone remained on or near the premises to protect the sheds, platforms, stables, etc., which remained thereon, and which were used in making brick.

Mrs. Ball died in 1894 leaving a will dated April 13, 1886, and which was filed in the office of the Register of Wills July 21, 1904. The defendants produced Robert G. Davidson, one of the witnesses to the will, who identified his signature thereto, and, after giving the usual testimony concerning its execution, testified that one other witness was dead and the third, Lilly C. Moore, was a resident of Maryland. Witness was then asked whether said Lilly C. Moore signed the will as a witness, and, over the objection and exception of plaintiffs, replied that she did. The will was thereupon offered in evidence, the material part of which is as follows:

"Of the five lots which I own in the city of Washington, D. C., I give and devise the corner lot to Garnett Brown, son of Edward H. Brown. I give and devise the four remaining lots to Eliza L. Clagett and Nannie H. Stone and Mary C. R. Harrison and Catherine B. Ball, to be selected as their names appear, namely, Eliza L. Clagett to have first choice, Nannie H. Stone to have second choice, Mary S. Harrison to have third choice, Catherine B. Ball the remaining one."

Evidence was then offered that the defendants Herrell and O'Neill were in possession of the lots in controversy in privity of estate with those claiming under Frances H. Ball. The jury was instructed that all deeds and instruments of date subsequent to the bringing of the suit were admitted solely for the purpose of showing the ground upon which the Capital Syndicate Company was admitted to defend.

*Mr. John E. Roller* and *Mr. Milton Strasburger* for the appellants.

*Mr. Wm. Mosby Williams* and *Mr. Irving Williams* for the appellees.

Mr. Justice Robb delivered the opinion of the Court:

No question was raised by the defendants as to the sufficiency of plaintiffs' title, and the court, without objection, instructed the jury, in substance, that the record title to said lots was in the plaintiffs. We, therefore, proceed to a consideration of plaintiffs' assignment of errors.

The first assignment of error relates to the ruling of the court in admitting tax deeds from Bartow L. Walker to Paul J. Brant and from Brant to the Virginia Alabama Company. The first of these deeds is dated in 1894. The court granted defendants' eighth prayer, which the record discloses "was conceded by plaintiffs," and which instructed the jury "that the defendants have shown that Frances H. Ball had color of title to the land in question," and "defendants' twelfth prayer, which was conceded by the plaintiffs," and which reads as follows:

"If the jury finds from the evidence that Frances H. Ball, under color and claim of title to the lots in controversy, leased the same to a tenant as early as the year 1868, and remained in possession of said lots through tenants for the full and uninterrupted period of more than twenty years from that date, and that such possession was open, continuous, notorious, adverse, actual, and exclusive under claim of ownership, then they are instructed, as a matter of law, that, if they should find from the evidence that the plaintiffs have established a record title to said lots, the possession of said Frances H. Ball, if found by the jury in the manner hereinbefore set forth, destroyed the title of the plaintiffs, and it passed to said Frances H. Ball; and their verdict must be for the defendants, unless you find from the evidence that the defendants entered upon the lots in controversy as mere trespassers."

Inasmuch as defendants relied solely upon the adverse posses-

sion of Frances H. Ball to defeat plaintiffs' record title, it is evident that the jury must have found for the defendants under the prayer just quoted. That being so, it is of no consequence whether the tax deeds objected to were introduced or not, since their date is subsequent to the ripening of Mrs. Ball's title by adverse possession. It was not necessary for defendants to rely upon said tax deeds as color of title. While the defendants proceeded to trace these tax titles to themselves, it was not necessary for them to do so. In *Reeves* v. *Low,* 8 App. D. C. 105, the contention was made that, in order to defeat a plaintiff in ejectment claiming the record title by proof of an outstanding title by adverse possession in someone other than the plaintiff, the defendant must not only show such outstanding title by adverse possession, but also that the defendant holds the possession for the holder of such adverse title, or claims in his own independent right, the holder of the adverse title still asserting his claim. The court disposed of this claim in these words: "It is beyond question that a plaintiff in ejectment may be defeated by proof of an outstanding title by adverse possession in another person, who is a total stranger to the suit, and between whom and the defendant there is no privity. *Smith* v. *McCann,* 24 How. 398, 16 L. ed. 714; *Doswell* v. *De La Lanza,* 20 How. 29, 15 L. ed. 824; *Love* v. *Simms,* 9 Wheat. 515, 6 L. ed. 149; *Harpending* v. *Reformed Protestant Dutch Church,* 16 Pet. 455, 10 L. ed. 1029; *Leffingwell* v. *Warren,* 2 Black, 599, 17 L. ed. 261; *Dickerson* v. *Colgrove,* 100 U. S. 582, 25 L. ed. 620; *Hall* v. *Gittings,* 2 Harr. & J. 125; *Hammond* v. *Inloes,* 4 Md. 173; *Lannay* v. *Wilson,* 30 Md. 545. * * * It is not necessary that a defendant in ejectment should show in what right he claims, or that he should show any right whatever in himself." Mrs. Ball having occupied these lots adversely for twenty years, all right of plaintiffs' predecessor in title was extinguished, and the title in Mrs. Ball was as perfect as though she had produced a deed in fee simple from the true owner; *Leffingwell* v. *Warren,* and *Harpending* v. *Reformed Protestant Dutch Church,* supra.

The second assignment of error specifies that the court erred

in admitting the lease to Leonidas Scott, and in charging the jury that it constituted color of title. No exception was noted to the introduction of this lease, but, even if there had been, it would not have availed appellants, because the lease tended to show claim of title by Mrs. Ball. *Briel* v. *Jordan,* 27 App. D. C. 202. The court, in its charge, in referring to this lease, used the terms "color of title" and "claim of title" indiscriminately; but the plaintiffs were not prejudiced thereby, because, as previously pointed out, they conceded that the deed of February 25, 1868, to Mrs. Ball constituted color of title.

The third assignment of error relates to the admission of the records of the assessor's office, but is not predicated upon an exception, and therefore, must be passed.

In the fourth assignment of error it is contended that the receipt from R. L. Stanton to James Jones should not have been admitted in evidence. No objection was offered to the admission of this paper because it was a copy, the objection being that it did not in terms refer to the lots in controversy, and that it was incompetent and immaterial. The witness, who identified the paper, testified that R. L. Stanton was the agent of Mrs. Ball at the time the receipt was given, and that James Jones, to whom it was given, occupied lots 7 and 8, and did in fact pay rent for the use of said lots to his aunt. Mrs. Ball, Mr. Stanton, and James Jones were dead. Clearly, had the original receipt been produced, it would have been admissible in connection with evidence identifying the lots. As no objection was offered because the paper was a copy, it is too late now to make the point.

The assignment of error involving the proof of the execution of the will of Frances H. Ball by the testimony of one subscribing witness, the second witness being dead, and the third being a nonresident, is without merit. Section 132 of the Code specifically provides that, if the testimony of the resident witness is taken and any other witness resides out of the District, it shall be sufficient to prove the signature of such nonresident witness; and that the will shall thereupon be admitted to probate.

The next assignment of error necessary to be noticed relates to the granting of defendants' seventh prayer, which as amended

by the court, is as follows: "In determining the facts as to adverse possession by the defendants, and those under whom they claim, the jury are instructed that the entering upon the lots in controversy, making improvements thereon, digging clay therefrom (for making and) depositing brick or other material thereon, the erection and maintenance thereon of a stable or other structures, are all circumstances which, if they find from the evidence were done by the defendants, or those under whom they claim, or the tenants of those under whom the defendants claim, are all facts which, if done under color of title, evince an intention of asserting ownership and possession; and, if such use and occupation are continued for more than twenty years prior to the institution of this suit in the manner set forth in the first prayer, the jury should find in favor of the defendants."

The ground for this objection is that it permitted the defendants to select for the jury detached and inconclusive facts and circumstances favorable to the defendants. We do not think the charge is subject to this objection. It is a fair synopsis of the testimony. Inasmuch as the plaintiffs rely solely upon their record title, it is obvious that there were no facts and circumstances put in evidence in their behalf to which the attention of the jury might have been directed in this charge.

Other exceptions were noted, but they are not of sufficient importance to merit consideration here.

The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*